16516

ARKWRIGHT MILLS v. MURPH
(65 S. E. (2d) 665)

*Mr. Arnold R. Merchant,* of Spartanburg, *for Appellant,*

*Messrs. J. Davis Kerr* and *Thomas A. Evins,* of Spartanburg, *for Respondent,*

June 13, 1951.

OXNER, Justice.

We are asked on this appeal to determine whether a manufacturing plant established in 1948 by Arkwright Mills at Camp Croft, Spartanburg County, is exempt from the payment of all county taxes, other than for school purposes, for

the years 1949 to 1953, inclusive. The taxes mentioned for the year 1949, amounting to $2,560.00, were paid under protest. Thereafter this action was brought by Arkwright Mills, a South Carolina corporation, against the Treasurer of Spartanburg County for the recovery of said amount with interest. A declaration is also sought to the effect that there will be no liability for such taxes during the following four years.

The claimed tax exemption is based on Section 2880 (2) of the 1942 Code, which is as follows: "In Spartanburg County every new manufacturing enterprise, the capital stock of which is *now* less than twenty-five thousand ($25,000.00) dollars, established since February 28, 1929, and every addition to any existing manufacturing enterprise, the cost of which addition is not less than twenty-five thousand ($25,-000.00) dollars, completed since February 28, 1929, shall be exempted from all county taxes of Spartanburg County, except for school purposes, for five years from the date of the establishment of such enterprises or the date of the completion of such addition to any existing enterprises. Provided, further, that no refunds are to be permitted under this subsection." (Italics ours.)

The foregoing section was amended by Act No. 425 of the 1944 Acts of the General Assembly, 43 St. at L. 1252, by adding the following: "Provided, Further, that no tax exemption hereunder shall be granted for additions to existing manufacturing plants when such additions are completed subsequent to June 30, 1944."

The case was heard upon an agreed statement of facts which the trial Judge summarized as follows: "That plaintiff, for many years prior to 1947, was a South Carolina corporation engaged in the manufacture of heavy drills and sheetings with a plant situated in Arkwright M. D. School District, Spartanburg County, S. C.; that its capital stock was and is far in excess of Twenty-five Thousand ($25,000-.00) Dollars; that in 1947 it purchased from the Spartanburg County Foundation forty-nine (49) acres of land and

ten (10) buildings situated thereon in Co-operative School District, Spartanburg County, South Carolina, which property was part of the old 'Camp Croft' military reservation; that this property was returned for taxation in the Auditor's Office for Spartanburg County for the year 1948 and valued for taxation as follows: Forty-nine (49) acres—ten (10) buildings, value $12,530.00; that during the year 1948 Arkwright Mills improved the buildings on this property by adding a sprinkler and humidifier system at a cost in excess of $52,000.00, installed machinery therein at a cost in excess of $327,000.00 and otherwise renovated and improved the property and equipped the same for the purpose of manufacturing cotton goods at a total cost to it of the sum of $665,-158.23; that for the taxable year commencing January 1, 1949, these properties in Co-operative School District increased from the 1948 valuation of $12,530.00 to $128,000-.00, there being included in the assessed valuation a manufacturing or personal property tax assessed by the South Carolina Tax Commission of $115,470.00; that during the latter part of 1948, Arkwright Mills began at its 'Camp Croft' site the manufacture of lightweight fancy goods under government contract; that Arkwright Mills continues to manufacture heavy drills and sheetings in its plant in Arkwright M. D. School District; that the type of goods manufactured at its 'Camp Croft' site is dissimilar in every respect to products manufactured in the Arkwright M. D. School District plant and there is no interchangeable or related work between the enterprises; that the enterprise in Co-operative School District, 'Camp Croft' site employs in excess of sixty (60) employees and they, at all times, are employed solely in the enterprise in Co-operative School District, 'Camp Croft' site and the superintendents of each plant are different; that the books of each are kept separate and apart from each other at the company's executive office in the Arkwright M. D. School District office, that, though not set out in detail in the Stipulation, the records in the Auditor's Office for Spartanburg County disclose that, in addition to the tax return

made by Arkwright Mills in Co-operative School District, it made and makes a separate return in Arkwright M. D. School District showing an assessed valuation there of $182,-800.00; the physical locations of the two enterprises are approximately five miles apart."

The Court below concluded that under the foregoing facts, the plant at Camp Croft was exempt from the payment of all county taxes, except for school purposes, during the years in controversy. From an order granting the relief sought in the complaint, the county has appealed.

The first question presented is the proper interpretation of Section 2880 (2). It is respondent's contention that the word "now" which we italicized in quoting said section is an obvious clerical error for which there should be substituted the word "not", so that said section would read as follows: "In Spartanburg County every new manufacturing enterprise, the capital stock of which is not less than twenty-five thousand ($25,000.00) dollars * * * and every addition to any existing manufacturing enterprise, the cost of which addition is not less than twenty-five thousand ($25,000.00) dollars * * * shall be exempted from all county taxes of Spartanburg County, except for school purposes, for five years * * *."

Appellant asserts that Section 2880 (2) is not ambiguous and should be literally interpreted as restricting the exemption to new manufacturing enterprises having a capital stock of less than $25,00.00.

The statute now embodied in Section 2880 (2) of the 1942 Code was enacted in 1933, 38 St. at L. 150 and in 1934 was amended in certain particulars not material to this controversy, 38 St. at L. 1386. Both in the orginal statute and in the amendment, there is found the controversial word "now".

It is elementary that the cardinal rule for the construction of statutes is to ascertain and give effect to the intention of the lawmaking body. All technical

rules of construction are subservient to this paramount consideration. In determining the legislative intent, the Court will, if necessary, reject the literal import of words used in a statute. It has been said that "words ought to be subservient to the intent, and not the intent to the words." *Greenville Baseball, Inc. v. Bearden,* 200 S. C. 363, 20 S. E. (2d) 813, 816. In *Stackhouse v. Rowland,* 86 S. C. 419, 68 S. E. 561, will be found a review or numerous cases in which clerical errors have been corrected by the courts pursuant to this principle. Also, see the recent case of *Ashley v. Ware Shoals Manufacturing Co.,* 210 S. C. 273, 42 S. E. (2d) 390, in which the word "usual" as used in the the Workmen's Compensation Act was construed to mean "unusual".

In determining the legislative intent, it is proper to consider the purpose sought to be accomplished. In *Duke Power Co. v. Bell,* 156 S. C. 299, 152 S. C. 865, 871, where the Court had under consideration a similar statute, the basic policy of legislation of this kind was stated as follows:

"At the time of the adoption of our Constitution of 1895, the policy of exempting property used in a manufacturing industry was more or less common among the States of the American Union. * * * It was, indeed, a policy recognized and expressly approved and sanctioned in our fundamental law (section 8, art. 8, Constitution of 1895) * * * . It is a matter of common knowledge that during the past quarter of a century many of the towns and cities of this State have availed themselves of the self-executing provision (section 8, art. 8) of the Constitution of 1895 and exempted manufacturing enterprises from taxation. It is also a matter of common knowledge that within the past few years the pressure of economic conditions which made it desirable for towns and cities to encourage the investment of capital in manufacturing enterprises by exempting such property from taxation for a limited period has extended to and become equally as exigent for counties and even for the

States themselves. Ours is distinctively an industrial age, and the prosperity of counties and of states, as well as of cities and towns, is becoming increasingly dependent upon the opportunity afforded their people for employment in manufacturing industries and upon the taxable value of property devoted to and used in manufacturing enterprises. The conditions are keenly competitive, and it is not surprising that within the past few years a large number of the counties of this state have sought and received authority from the Legislature to exempt manufactories located within their borders from county taxes for a limited period of years."

In seeking the legislative intent, it is also proper to consider cognate legislation. It is significant to note that in almost all of the exempting provisions relating to various counties found in Article 8, Section 8 of the Constitution, the exemption is either restricted to manufacturing establishments having capital of *not less* than a stipulated amount or the value of which is above a certain prescribed sum. The provision, relating to Spartanburg County in this section of the Constitution, adopted, in 1929, 36 St. at L. 238, is as follows: "That the General Assembly shall have the power to extend the provisions of this section to all manufacturing establishments with a capital of not less than Twenty-five Thousand ($25,000.00) Dollars desiring to locate in the County of Spartanburg."

Pursuant to the above constitutional provision, the following statute was enacted in 1930, 36 St. at L. 2051: "That all manufacturing establishments hereafter desiring to locate in the County of Spartanburg with a capital stock of not less than Twenty-five Thousand ($25,000.00) Dollars shall be exempt from all County taxes for the period of five (5) years after the organization by the payment of said capital stock of Twenty-five Thousand ($25,000.00) Dollars and the location in said County of such manufacturing establishments."

The Code contains numerous similar statutes relating to

other counties, in which the exemption is restricted to new manufacturing establishments or enterprises with a capital or capital stock of *not* less than a certain amount or having a value in excess of a stipulated sum. In none of these statutes is the exemption restricted to new industries, the capital stock of which "is *now* less than" a certain amount. In other words, no effort has been made in any statute to restrict the exemption to small enterprises but, on the contrary, there has been a general policy of extending the exemption only to industries of a certain minimum size.

We are in full accord with the view of the trial Judge that the use of the word "now" in Section 2880 (2) was due to a clerical mistake and that the legislative intent was to use in lieu thereof the word "not". We think this is perhaps obvious from a more reading of this section but any doubt thereabout is certainly removed when the background of this legislation is considered. Any other construction would lead to a rather absurd result. The statute was clearly intended to include any new manufacturing enterprise located in Spartanburg County after the passage of the act, yet under appellant's construction the exemption would be restricted to those enterprises having at such time a capital stock of less than $25,000.00. The acceptance of appellant's view would also result in the inconsistency of extending the exemption to an addition to an existing manufacturing enterprise costing not less than $25,000.00 but excluding from the exemption a new manufacturing enterprise having a capital stock of more than $25,000.00.

The remaining question for determination is whether the plant established by respondent at Camp Croft in 1948 constitutes a "new manufacturing enterprise", or whether it is a mere *addition* to an existing manufacturing plant and thus excluded from the exemption under the terms of the 1944 amendment to Section 2880 (2).

The case of *Duke Power Co. v. Bell, supra,* 156 S. C. 299, 152 S. E. 865, 868, is quite persuasive that the establishment at Camp Croft is a new manufacturing enterprise

within the contemplation of Section 2880 (2). The question there was whether a power station or plant erected by a public utility corporation in Lancaster County was exempt from certain taxes under a joint resolution of the General Assembly which provided that all "manufactories" desiring to locate in the County of Lancaster and certain other counties with a capital of not less than $100,000.00 should be exempt from all county taxes, except for school purposes, for five years from the time of their establishment. For a number of years this corporation maintained a dam across Catawba River and at the Fairfield County end owned and operated a power station for the generation of electricity. During 1925 and 1926 it constructed a power station on the Lancaster side of the dam which was known as the Cedar Creek Power Station. The construction of this plant required the taking out or removal of a considerable part of the old and the construction of an altogether new dam about 250 feet in length on the Lancaster side, which, however was connected with the old dam. This new station constituted a complete unit for the generation of electric power. The claim to exemption was contested by Lancaster County on numerous grounds, one of which was that the Cedar Creek Power Station was not a *new* manufactory within the contemplation of said resolution, but merely an addition to property already being used for generating electricity. In denying this contention, the Court said: "Facts * * * clearly established that this Cedar Creek Power Station was not a mere addition to or enlargment of an existing plant or manufactory in the County of Lancaster; but was a new plant or manufactory. While one end of the old or previously existing dam was in Lancaster County, there had been no plant or manufactory for the generation of electricity on the Lancaster side of the river. The location and construction of this Cedar Creek Power Station, involving the expenditure and investment of capital in excess of One Million Dollars ($1,-000,000.00), by a company with a captial stock largely in excess of One Hundred Thousand Dollars ($100,000.00),

unquestionably resulted in the 'establishment' of a *manufactory*, with a capital in excess of One Hundred Thousand Dollars ($100,000.00), within the meaning of the Statute."

We think the foregoing decision practically controls the question now under consideration. The establishment at Camp Croft is a complete and self-contained manufacturing unit located five miles from the other plant of respondent. It represents an investment of over half a million dollars and gives employment to more than sixty people. It is in no sense a substitute for any part of the other plant owned by respondent. The act before us was designed to bring new industries into Spartanburg County so as to add to its taxable wealth and afford a greater opportunity for employment. The Camp Croft plant serves both of the purposes. The legislative intent was certainly not to discriminate against those corporations already having manufacturing enterprises in Spartanburg County. Yet the adoption of appellant's view would have that effect and, indeed, would tend to cause any such corporation contemplating the establishment of a new manufacturing enterprise to locate same in some other county.

We are aware of the fact that a statute of the kind under consideration must be strictly construed but even so, we think the Camp Croft establishment constitutes a new enterprise within the contemplation of Section 2880 (2) rather than a mere addition to the existing plant of Arkwright Mills.

Respondent also seeks to sustain its claim to exemption on the theory that if the Camp Croft establishment is held to me an *addition,* it is an addition to a manufacturing *enterprise* and not to a manufacturing *plant* within the purview of the 1944 amendment. We find it unnecessary to pass upon this question.

All exceptions are overruled and the decree appealed from affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.