## 17118

J. L. ABELL *ET AL.*, Respondents, v. S. L. BELL *ET AL.*, THE
CHESTER COUNTY SCHOOL BOARD OF TRUSTEES *ET
AL.*, Appellants. HATTIE H. FUDGE *ET AL.*, Respondents, v.
S. L. BELL *ET AL.*, as THE CHESTER COUNTY SCHOOL
BOARD OF TRUSTEES *ET AL.*, Appellants.

(91 S. E. (2d) 548)

*Charles W. McTeer, Esq.,* of Chester, *for Appellants,*

*E. K. Hardin, Esq.,* of Chester, *for Respondents.*

February 15, 1956.

Legge, Justice.

These two cases were argued together in the circuit court, and involve the same issue, to wit: Is the provision of the

Act of February 25, 1954, XLVIII Stat. at L. p. 1468, for the conveyance of an abandoned school building by the trustees of a consolidated school district to the "community trustees" of the area constituting the former school district in which such building is located, mandatory or permissive?

In its preamble, the Act recites that "in the program of consolidation of the schools within the counties of this state, a number of school buildings will not be needed for school purposes", and that "it is desirable to allow any such abandoned school building to be conveyed by deed to the community constituting the area of the old school district in which it was located, so that any such community will not be entirely deprived of a community building within which to hold community meetings and entertainments". Section 1 reads:

"The trustees of any consolidated school district are hereby authorized to convey by deed any school building within the district which is no longer needed for school purposes. Any such abandoned school building shall be conveyed to the duly elected community trustees of the area constituting the former school district in which it is located, and their successors in office, in trust for the use and benefit of the community as a community building".

Section 2 provides for the election, by the qualified electors of the area constituting the former school district, of three "community trustees". Section 3 provides that the trustees so elected "shall hold, manage and direct the use of the premises as a community center for the use and benefit of the residents of the community or area", fixes their term of office at two years, and makes provision for election of successors. Section 4 authorizes the community trustees to remodel and repair any such building, at the expense of the community, exempts them from financial responsibility for injury to the property, and directs that they maintain such property in reasonable repair and insure the building against fire. Section 5 provides for reversion if the premises should cease to be used as a community center, and for reconveyance

to the trustees of the consolidated district, at their option, should the building again be needed for school purposes.

The complaint in each of the cases at bar alleges that the plaintiffs are the community trustees of the area constituting a former school district in Chester County, having been duly elected in accordance with the 1954 Act before mentioned; that in the process of the consolidation of many schools in that county, the defendants have abandoned a certain school building in that area; that this building has for many years been the educational and cultural center of the community, and its abandonment has left the community without any suitable building for use as a community center; that the plaintiffs have requested the defendants to convey this property to them in accordance with the Act; but that the defendants have refused to do so and have advertised the property for sale at public auction. The prayer is for an order requiring the conveyance to plaintiffs as community trustees, and for injunction, *pendente lite,* against the proposed sale. Demurrer, upon the ground that the 1954 Act is permissive only, was overruled, and conveyance of the property to the plaintiffs ordered, by decree of the circuit court dated May 7, 1955, from which this appeal is taken. We are concerned only with the single issue before stated.

A statute must be construed in the light of its intended purpose; and if such purpose can be reasonably discovered in its language, the purpose will prevail over the literal import of the statute, for the dominant factor in the rule of construction is the intent, not the language, of the legislature. *Beaufort County v. Jasper County,* 220 S. C. 469, 68 S. E. (2d) 421; *Cain v. South Carolina Public Service Authority,* 222 S. C. 200, 72 S. E. (2d) 177.

If the intent of the legislature be clearly apparent from its language, the court may not embark upon a search for it dehors the statute. *Town of Forest Acres v. Seigler,* 224 S. C. 166, 77 S. E. (2d) 900; *Bagwell v. Ernest Burwell, Inc.,* 227 S. C. 168, 87 S. E. (2d) 583; *State v. Conally,* 227 S. C. 507, 88 S. E. (2d) 591.

. But where the language of the statute gives rise to ■ doubt or uncertainty as to the legislative intent, the. ' search for that intent may range beyond the borders of the statute itself; for it must be gathered from a reading of the statute as a whole in the light of the circumstances and conditions existing at the time of its enactment. *Greenville Baseball, Inc., v. Bearden,* 200 S. C. 363, 20 S. E. (2d) 813; *City of Spartanburg v. Blalock,* 223 S. C. 252, 75 S. E. (2d) 361.

It is proper, too, in seeking the legislative intent, ■ to consider cognate legislation. *Arkwright Mills v. Murph,* 219 S. C. 438, 65 S. E. (2d) 665; *Edwards v. State Educational Finance Commission,* 222 S. C. 433, 73 S. E. (2d) 456. Subsequent legislation may be of service as indicating the construction given to the former by the legislature itself. 50 Am. Jur., Statutes, Section 337, page 328.

With these settled principles to guide us, we turn to the statute under review. Some uncertainty as to the legislative intent would seem to appear in Section 1, by the first sentence of which the trustees of the consolidated school district are *authorized to convey* by deed any school building within the district no longer needed for school purposes, and the next sentence of which provides that "any such abandoned school building *shall be conveyed* to the duly elected community trustees of the area * * *."

It is common knowledge that in many areas the ■■ schoolhouse is, of necessity, the center of community activities. There, by courtesy of the school authorities, the people of the vicinity have long been accustomed to meet for cultural and recreational purposes, for the neighborhood boasts no other building suitable for such purposes. During the last few years, however, in the course of the state's extensive program of school construction and consolidation and pupil transportation, many of the smaller rural school districts have lost their identity, and some school buildings in such areas have been abandoned, as in the cases before us. That the purpose of the 1954 Act was to render

such abandoned schoolhouses available as community centers for the areas thus affected is apparent from its preamble.

On March 9, 1896, there was approved "An Act to Declare the Free School Law of the State" XII Stat. at L. p. 150, by Section 39 of which the school trustees of the several school districts were "authorized and empowered to sell any school property, real or personal, in their school districts whenever they deem it expedient to do so, and to apply the proceeds of sale or sales to the school fund of the district"; and this provision has been carried forward in subsequent codifications, being Section 21-238 of the 1952 Code.

By two Acts, both approved January 30, 1950, XLVI Stat. at L. pp. 1813, 1815, which appear in the 1952 Code as Sections 21-1801 through 21-1816, the several school districts of Chester County were consolidated into a single district under the jurisdiction and government of the Chester County School Board of Trustees, appellants here, whose duties and powers are specifically enumerated in the eighteen subsections of Section 21-1807, none of which makes reference to disposition of school buildings.

It is apparent, therefore, that whatever power appellants may have had, prior to the passage of the 1954 Act, with regard to disposal of abandoned school buildings, was derived from Section 21-238, and thus limited to sales for monetary consideration.

The 1954 Act is entitled "An Act To Provide For The Transfer Of Abandoned School Buildings To Certain Communities For Use As Community Centers"; and that no monetary consideration is contemplated in such cases is suggested not only by the preamble but also by the use throughout the Act of such words as "transfer" and "convey", and the absence of reference to a sale or its proceeds. The first sentence of Section 1 authorizes such conveyance, and the sentence immediately following provides that it shall be made to the community trustees elected pursuant to the Act. That the authorization and the mandate

were not merged into a single sentence is of no consequence. The Act should be construed not piecemeal, but as a whole, and in the light of the circumstances and conditions existing at the time of its passage, and of the legislative purpose manifest in its preamble. Thus viewing it, we conclude without difficulty that the duty imposed upon the trustees of a consolidated school district, in the circumstances set forth in the Act, to convey an abandoned school building to the community trustees upon their request and without consideration, is mandatory. Support for this conclusion is found in certain subsequent legislation, *in pari materia,* to which we shall briefly refer.

By Act approved March 5, 1954, XLVIII Stat. at L. p. 2421, all abandoned school buildings in Oconee County were declared to be community property, to be managed by the County Board of Trustees for the use and benefit of the citizens of the respective local school districts as they existed prior to consolidation, for such community purposes as might be requested by petition of a majority of the freeholders of such districts, or for the general charitable purposes of the county. And by a like enactment on May 19, 1955, XLIX Stat. at L. p. 658, all abandoned school buildings in Williamsburg County were declared to be community property, to be used for like purposes under the management of the County Board of Education, provision being also made for the sale of such property by the county board in the event that there be no demand for its use within a reasonable time after its abandonment. Both of these acts clearly negative the idea that the General Assembly intended to leave the disposition of the buildings in question to the discretion of the trustees of the consolidated school district.

Affirmed.

STUKES, TAYLOR and OXNER, JJ., and J. WOODROW LEWIS, Acting Associate Justice, concur.