23000

SANTEE COOPER RESORT, INC., Appellant v. The SOUTH CAROLINA PUBLIC SERVICE COMMISSION and Steven W. Hamm, Consumer Advocate for the State of South Carolina, Respondents.

(379 S. E. (2d) 119)

Supreme Court

*Thomas M. Boulware,* of *Brown, Jefferies & Boulware,* Barnwell, *for appellant.*

*Marsha A. Ware,* of *S. C. Public Service Com'n, Steven W. Hamm* and *Natalie J. Moore,* of *Division of Consumer Advocacy,* Columbia, *for respondents.*

Heard Jan. 24, 1989.

Decided April 10, 1989.

HARWELL, Justice:

This case involves the authority of a circuit court judge to put a rate schedule for a public utility into effect under bond at the motion of the Consumer Advocate. We reverse.

### ₀FACTS

The appellant, Santee Cooper Resort, Inc. ("Santee") operates a golf course on the shores of Lake Marion. In connection with the golf course, Santee developed a residential retirement subdivision. Santee also operates a water system for the development. The current action arises out of this water system, which Santee has operated since 1971.

For the first eleven years of operation (1971-1982), Santee did not have the required approval from the Respondent, South Carolina Public Service Commission ("Commission"), to operate this system. The Commission did not set the water rates; Santee set its own rates, charging a flat rate of $7.00 per month per residential customer.

On March 9, 1982, Santee filed an application seeking certification for approval to operate a water system and establishment of a schedule of rates.[1] On June 8, 1982, a

---

[1] Santee's president testified that he was not aware that Santee w ɟ subject to the jurisdiction of the Public Service Commission until the Fall of 1981.

public hearing was held on this application.

On August 9, 1982, the Commission issued Order 82-551 granting the certificate and establishing a rate schedule. The rate set was $8.00 per month per residential customer. Respondent Steven W. Hamm, in his capacity as Consumer Advocate, filed a petition for reconsideration and rehearing of this Order. This petition was denied. The Consumer Advocate then filed a petition for appellate review in the circuit court.

On February 10, 1983, while the petition for review was pending, the Consumer Advocate filed a motion with the circuit court to place Santee's $8.00 rate into effect under bond. The Consumer advocate further moved the court to set a rate of interest for any refund which might be ordered as a result of the appeal. On March 11, 1983 the court granted the motion, put the rates into effect, and required Santee to file a bond undertaking to secure a refund with 14% interest, if any was ordered upon final disposition of the case. On March 28, 1983, Santee filed a notice of intent to appeal the Order of March 11. We dismissed the appeal because the March 11 Order was interlocutory and therefore unappealable. Santee then filed the required bond undertaking.

Thereafter, the Consumer Advocate's appeal was heard by the circuit court. In an Order issued on October 21, 1983, the case was remanded because the circuit court found that specific findings required by the South Carolina Administrative Procedures Act were lacking in the Commission's Order.

The remand hearing was held before the Commission and an Order issued on May 15, 1985. This Order directed that a compliance audit be completed. The Order also directed that the previously approved $8.00 rate be continued pursuant to the original Order. After examining an original and amended audit report and hearing new evidence and examining new documents, the Commission issued an Order of May 1, 1987 setting a new rate schedule.

The newly approved rates changed the minimum fee from $8.00 to $6.00 per month, and a refund was ordered. Santee's petition for reconsideration was denied and a final Order was issued on June 16, 1987. This appeal follows.

## DISCUSSION

The sole issue to be resolved here is whether the circuit court had the authority to put the rate schedule into effect under bond in its Order of March 11, 1983.

In his Order, Judge Burnett required Santee "to maintain in effect under bond ... the rates previously filed and put into effect pursuant to [the] order of the [Commission] and Title 58 of the Code of Laws of South Carolina." When this Order was appealed Judge Stephen articulated the matter before him as follows:

"The real question is whether the court had inherent authority to adopt, pending further review on remand, the August 9, 1982 rates, and perpetuate those rates with [a] bond undertaking for refund if there was a reduction upon remand."

Judge Stephen then affirmed Judge Burnett's conclusion that the Administrative Procedures Act ("APA"), S. C. Code Ann. §§ 1-23-310 through 400 (1976), coupled with the court's inherent equitable power, authorized the court to order the bond. For reasons discussed below, we disagree.

### A. STATUTORY AUTHORITY

Two statutory schemes must be examined in this case: 1) S. C. Code Ann. § 58-5-210 through 370 (1976) (dealing with "Regulation of Rates and Services Generally"); and 2) the APA. Together, these provisions establish the framework for the setting of utility rates and review of Commission decisions in setting those rates.

When a utility desires to set a new rate, it must apply to the Commission pursuant to § 58-5-240 ("Filing schedules of proposed new rates and the like ..."); the Commission then evaluates the application and sets approved rates which the utility may charge. In 1971, however, Santee did not submit an application for rates; instead it began charging a flat rate of $7.00 per month. In 1982, upon realization that it was subject to the Commission's jurisdiction, Santee filed to have rates set. Ordinarily, this filing would be treated as an application for the setting of initial rates; however, Judge Burnett's order characterized the application as follows:

I thus find that the rates set by the Commission in its order effectively constitute a rate increase for customers, even though the Commission may have treated this case as one in which rates and charges were being established pursuant to Title 58 of the Code of Laws of South Carolina.

Neither party has objected to Judge Burnett's characterization of the action taken here as a rate increase. Moreover, because of the unique factual situation presented by Santee's prevous operation of the system for eleven years at a flat rate of $7.00, we agree that the Commission's setting of an $8.00 per month flat rate constituted a rate increase. We therefore examine the statutory scheme to be followed when a rate increase is disputed.

Once a rate increase is established, a dissatisfied party may apply to the Commission for a rehearing pursuant to § 58-5-330. The Commission may then change or abrogate its previous Order or it may leave the Order in effect. If the rehearing is denied, or if an unsatisfactory result is reached upon rehearing, a party is entitled to court review. *See* § 58-5-340 ("Court review of orders or decisions"). Section 58-5-340 provides that after rehearing, a party may "commence an action in the court of common pleas ... against the Public Service Commission as defendant to *vacate* or *set aside* any such order of the Commission or *enjoin* the enforcement thereof ..." (emphasis added). If the moving party succeeds in the circuit court the order does not go into effect. However, if the utility desires implementation of the increase pending final adjudication, the utility may *choose* to execute and file a bond undertaking to secure any refunds which may be determined to be owed to customers. If the utility does not choose to put up a bond and the rate schedule is not put into effect, the utility continues to charge the rate previously charged prior to the application for increase. Section 58-5-340 provides for bonds at the motion of the *utility*, not a third party. Here, the court put the rate into effect and required the bond as a result of a motion by the Consumer Advocate, *not* Santee.

As partial authority for its action the circuit court relied on § 1-23-380 of the APA ("Judicial review upon exhaustion

of administrative remedies"). Section 1-23-380 provides a mechanism for court review of agency decisions. The party seeking review may file a'petition for review. § 1-23-380(b). This petition "does not inself stay enforcement of the agency decision.... [T]he reviewing court may order a *stay* upon appropriate terms." § 1-23-380(c) [emphasis added]. Judge Stephen affirmed Judge Burnett's view that if the court could, pending judicial review, stay an administrative decision "upon appropriate terms," it could, under § 1-23-380(c), implement and enforce such decisions under appropriate terms.

■ The term used in the APA is "stay." This term cannot be construed to give a court authority to put rates into effect under bond. Judge Burnett and Judge Stephen held and Respondent argues that the language "stay upon appropriate terms" is broad enough to authorize the action taken here. We disagree. Words used in a statute should be taken in their ordinary and popular significance unless there is something in the statute requiring a different interpretation. *Hatchett v. Nationwide Mutual Insurance Co.*, 244 S. C. 425, 137 S. E. (2d) 608 (1964). To "stay" an order is "to hold it in abeyance or refrain from enforcing it"; a "stay" is "a stopping." *Black's Law Dictionary* 1267 (5th ed. 1979). Clearly the § 1-23-380(c) provision for a "stay" means the court can only order that the rate schedule be held "in abeyance." To hold that "to refrain from enforc[ing]" an order also means putting it into effect under bond is to torture the meaning of the statute. "There is a marked distinction between a liberal construction of statutes ... and the act of a court in ingrafting upon a law something that has been omitted...." *Hatchett*, 137 S. E. (2d) at 611. To hold that the statute authorizes more than its plain language allows is to legislate. This Court has no legislative powers; it is our province to construe laws, not make them. *Creech v. South Carolina Public Service Authority*, 200 S. C. 127, 20 S. E. (2d) 645 (1942). There is no statutory authority here for the court ordered bond undertaking.

## B. EQUITABLE AUTHORITY

Respondent argues that even if there was no statutory authority to put the rates into effect under bond, the court had authority because of its inherent equitable power. We disagree.

Equitable relief is generally available only where there is no adequate remedy at law. An adequate legal remedy may be provided by statute. 27 *Am. Jur.* (2d), *Equity*, § 94 (1966). An "adequate" remedy at law is one which is as certain, practical, complete and efficient to attain the ends of justice and its administration as the remedy in equity. *Id* at p. 621. Here the statutory alternatives adequately enable the Consumer Advocate to achieve the goal of consumer protection. The Circuit Court did not grant relief in the form of these alternatives; instead, it fashioned a new remedy contrary to those provided for by the statute. Here, the court's equitable powers must yield in the face of an unambiguously worded statute. In granting the motion of the Consumer Advocate, the Court erroneously exceeded the limitation imposed by the statute.

## CONCLUSION

The circuit court lacked authority to put the rates into effect under bond, therefore its Order is reversed. Consequently, that portion of the Order of the Commission which directs Santee to pay refunds pursuant to this circuit court Order has no valid basis. Both the Order of the circuit court putting the rates into effect under bond and that portion of the Order of the Commission for refunds are

Reversed.

GREGORY, C. J., and CHANDLER, FINNEY and TOAL, JJ., concur.