602 S.E.2d 104

KEY CORPORATE CAPITAL, INC., National Tax Assistance Corporation, TransAm Tax Certificate Corporation d/b/a Destiny 98TD, Advantage 99TD, TA Escrow 97 and Destiny 98, Respondents,

v.

COUNTY OF BEAUFORT, Treasurer of Beaufort County and Tax Collector of Beaufort County, Appellants.

No. 3857.

Court of Appeals of South Carolina.

Heard June 23, 2004.
Decided Aug. 16, 2004.
Rehearing Denied Sept. 23, 2004.

514

David S. Black and Mary Bass Lohr, both of Beaufort, for Appellants.

James Howarth Ritchie, Jr., of Spartanburg, for Respondents.

HEARN, C.J.:

This case arises from numerous voided tax sales of real property in Beaufort County. After the sales were voided, the County returned the purchase prices to the successful bidders but refused to return the interest the money had earned. The bidders sued and, under a theory of restitution, were awarded an amount equal to the interest earned by Beaufort County during the time it held the bidders' money. The County appeals. We affirm.

## FACTS

Key Corporate Capital, Inc., National Tax Assistance Corporation, and TransAm Tax Certificate Corporation ("bidders") purchased a number of properties at Beaufort County tax sales in 1998 and 1999. The Beaufort County Treasurer voided twelve of these tax sales pursuant to the authority vested in the Treasurer by section 12–51–150 of the South Carolina Code (2000). The voiding of the tax sales resulted solely from the actions or inactions taken by Beaufort County and its agents. Specifically, the Treasurer discovered a series of "errors, oversights, and/or miscommunications within the Beaufort County offices, meaning the Treasurer's Office and/or the Auditor's Office." These errors included "a deed recording error resulting in an invalid notice to the defaulting taxpayer," a failure to accurately credit the payment of delinquent taxes, and "a flaw with regard to statutory notice to the delinquent taxpayer."

When the tax sales were voided by the County of Beaufort, Treasurer of Beaufort County, and Tax Collector of Beaufort County ("the County"), the amounts paid for the properties were refunded to the bidders. However, the County retained the purchase price on each property for at least thirty days, and in some cases, the County held the purchase price for over a year.

The County actually accrued $28,010.93 in interest by holding the monies involved in these voided tax sales. The bidders sued the County, arguing that in addition to recouping the amount of their bid, they should also receive the interest their money earned while in the County's possession. The master-in-equity agreed and ruled that under a theory of restitution,

the bidders were entitled to the actual interest earned by the County prior to the return of the purchase price. We affirm.

## STANDARD OF REVIEW

"When legal and equitable actions are maintained in one suit, each retains its own identity as legal or equitable for purposes of the applicable standard of review on appeal." *Kiriakides v. Atlas Food Sys. & Servs., Inc.,* 338 S.C. 572, 580, 527 S.E.2d 371, 375 (Ct.App.2000) (quoting *Corley v. Ott,* 326 S.C. 89, 92 n. 1, 485 S.E.2d 97, 99 n. 1 (1997)). "In an action at equity, this court can find facts in accordance with its view of the preponderance of the evidence." *West v. Newberry Elec. Co-op.,* 357 S.C. 537, 542, 593 S.E.2d 500, 502 (Ct.App.2004). "In an action at law, tried without a jury, the appellate court standard of review extends only to the correction of errors of law." *Okatie River, L.L.C. v. Southeastern Site Prep, L.L.C.,* 353 S.C. 327, 334, 577 S.E.2d 468, 472 (Ct.App.2003).

## LAW/ANALYSIS

The County first argues that section 12–51–150 of the South Carolina Code (2000), which governs voided tax sales, compels our court to allow the County to retain the interest while holding a successful bidder's money. We disagree.

Section 12–51–150 states:

In the case that the official in charge of the tax sale discovers before a tax title has passed, the failure of any action required to be properly performed, the official may void the tax sale and refund the amount paid to the successful bidder.

The County argues that because this section only addresses the return of the purchase price upon the voiding of a tax sale, the statute allows the County to keep the interest earned on the money. However, we do not believe the statute's silence on the subject entitles the County to retain the interest.

In contrast to section 12–51–150's silence, other code sections relevant to tax sales address which party is entitled to interest in certain situations. For instance, under section 12–51–130, *the County* is "entitled to the earnings for keeping the overage [amount paid at auction greater than the amounts

owed by delinquent taxpayer]." S.C.Code Ann. § 12–51–130 (Supp.2003). Section 12–51–100, however, provides that *a successful bidder* is entitled to receive interest on the bid price in the event the property is redeemed. S.C.Code Ann. § 12–51–100 (2000). Because other statutes are explicit about which party is entitled to keep interest on bid prices from tax sales, the silence of section 12–51–150 does not, by itself, indicate the Legislature's intent.

The County also argues that, because section 12–51–150 does not specifically grant bidders the right to recoup the interest the County earns on their money, the County is entitled to the interest pursuant to the supreme court's decision in *Red Oak Lands, Inc. v. Lane,* 268 S.C. 631, 235 S.E.2d 718 (1977). We disagree.

In the *Red Oak Lands* case, a corporation (Red Oak) bought property at a tax sale but was later divested of title to that property. Red Oak sued the tax collector for the damages it sustained from this divestment pursuant to sections 65–2782 through 65–2785 of the South Carolina Code (1962), which entitled a divested tax sale purchaser to a lien on the property for the amount paid at the tax sale or to recover that amount directly from the taxing authority. These statutes, however, required the divested tax sale purchaser to bring suit against the taxing authority within two years of the sale. *Id.* at 634, 235 S.E.2d at 720.

The trial court found that Red Oak failed to state facts sufficient to constitute a cause of action. *Id.* at 632–633, 235 S.E.2d at 719. On appeal, Red Oak argued, among other things, that the trial court erred in refusing to grant its request to replead. Specifically, Red Oak wanted to amend its complaint to include a common law action for the tax collector's misfeasance related to the sale. The supreme court found the statutory remedy provided to tax sale purchasers was exclusive, and therefore "it would be a futile gesture to grant Red Oak the right to replead" because the two-year limitation period provided by Section 65–2785 had expired. *Id.* at 636, 235 S.E.2d at 720.

The *Red Oak Lands* court held that the exclusive remedy for recovery of the purchase price of a tax sale was the remedy provided by statute. However, unlike Red Oaks, the

bidders in this case are not attempting to assert a common law cause of action against the County for recovery of the purchase price *in addition to* the cause of action provided by statute. Instead, the bidders acknowledge that their only relief stems from section 12–51–150. However, they argue that because section 12–51–150 is silent regarding which party is entitled to the interest, we should consider the rules of equity when interpreting the statute and find that the statute's requirement that the County return the bid price implicitly directs the County to return actual interest earned as well. We agree.

Equity is reserved for situations when there is no adequate remedy at law. *Santee Cooper Resort, Inc. v. South Carolina Pub. Serv. Comm'n,* 298 S.C. 179, 185, 379 S.E.2d 119, 123 (1989). For a court to justify refusing to exercise equity, the remedy at law must be adequate. *Chisolm v. Pryor,* 207 S.C. 54, 60, 35 S.E.2d 21, 24 (1945). Furthermore, "[i]t is not enough that there is some remedy at law, but that remedy must be as practical, efficient, and prompt as the remedy in equity." *Id.*

In this case, no adequate legal remedy exists. Section 12–51–150 requires the return of the purchase price, but is silent as to any interest earned. Without resorting to equitable remedies, no remedy exists to prevent the County from reaping a benefit from its own mistakes.

The County argues that, pursuant to *Santee Cooper Resort, Inc. v. South Carolina Public Service Commission,* 298 S.C. 179, 185, 379 S.E.2d 119, 123 (1989), "[t]he court's equitable powers must yield in the face of an unambiguously worded statute." However, in *Santee Cooper Resort, Inc.,* the supreme court found an adequate legal remedy existed when it was confronted by clear "statutory alternatives adequately enabl[ing] the Consumer Advocate to achieve the goal of consumer protection." *Id.* This is in sharp contrast to the case at hand. Here, the statute contains no statutory provision addressing the issue of interest, and without resorting to equity, no remedy would exist. It is an equitable maxim that "[e]quity will not suffer a wrong without a remedy." *Lane v. New York Life Ins. Co.,* 147 S.C. 333, 369, 145 S.E. 196, 207 (1928); *see also State ex rel. Daniel v. Strong,* 185 S.C. 27, 43,

192 S.E. 671, 678 (1937) ("[E]quity abhors a wrong without a remedy."). Where, as here, a wrong has been suffered, and no adequate legal remedy exists, it is well within the court's powers to fashion an equitable remedy.

■ In this case, the master-in-equity used the equitable remedy of restitution to disgorge from the County the interest it earned on the bidders' money. In order to recover under a theory of restitution, the bidders must show: (1) they conferred a non-gratuitous benefit on the County; (2) the County realized some value from the benefit; and (3) it would be inequitable for the County to retain the benefit without paying the bidders for its value. *Sauner v. Pub. Serv. Auth. of South Carolina*, 354 S.C. 397, 409, 581 S.E.2d 161, 167 (2003).

■ In the case at hand, the bidders clearly meet the first two elements of restitution: (1) the bidders paid for real property expecting to gain title; and (2) the County received $28,010.93 in interest while holding the bidders' money. As to the third element, the County argues that no inequity occurred because a clear and disclosed term of the tax sale was that, in the event the sale was voided, the bidder would not receive interest on the bid price. Importantly, however, the County never argued that this notice estops the bidders from claiming that they are entitled to interest. Furthermore, we do not believe that the bidders should be precluded from pursuing their equitable entitlement to interest merely because the County, apparently relying on section 12–51–150's silence, notified bidders that no interest would be awarded in the event the sale was voided.

Balancing all the equities, we find that, in spite of the County's notice to bidders, it would be unjust to allow the County to keep the interest on the purchase prices of tax sales that were voided due to the County's own errors and omissions. To reward the County for its own internal errors would discourage the County from carefully conducting tax sales. Further, because the amount of interest earned is determined in part by the amount of time the County retains a bidder's purchase price, the County would have little incentive to promptly return the bidder's money after a tax sale is voided. Thus, equity dictates that bidders, not the County, are entitled

to the interest their money actually earns while in the possession of the County when a tax sale is voided.

Accordingly, the master-in-equity's decision to award $28,010.93 in restitution is

**AFFIRMED.**

STILWELL, J. and CURETON, Acting J., concur.