644 S.E.2d 675

**KEY CORPORATE CAPITAL, INC., National Tax Assistance Corporation, TransAm Tax Certificate Corp. d/b/a Destiny 98TD, Advantage 99TD, TA Escrow 97 and Destiny 98, Respondents,**

v.

**COUNTY OF BEAUFORT, Treasurer of Beaufort County, and Tax Collector of Beaufort County, Petitioners.**

No. 26302.

Supreme Court of South Carolina.

Heard Dec. 7, 2006.

Filed April 9, 2007.

56

David S. Black, and Mary B. Lohr, both of Howell Gibson & Hughes, of Beaufort, for Petitioners.

James H. Ritchie, Jr., of Holcombe, Bomar, Gunn & Bradford, of Spartanburg, for Respondents.

Justice WALLER.

We granted a writ of certiorari to review the Court of Appeals' decision in *Key Corporate Capital, Inc. v. County of Beaufort,* 360 S.C. 513, 602 S.E.2d 104 (Ct.App.2004). We reverse.

## FACTS

In 1998 and 1999, respondents Key Corporate Capital, Inc., National Tax Assistance Corporation, and TransAm Tax Certificate Corporation purchased several properties at Beaufort County tax sales. The Beaufort County Treasurer subsequently voided twelve of these tax sales. *See* S.C.Code Ann. § 12–51–150 (2000).[1]

The parties stipulated to the following facts: (1) the tax sales were voided because the Treasurer discovered "errors,

---

1. The version of section 12–51–150 relevant to the instant action states as follows:

 In the case that the official in charge of the tax sale discovers before a tax title has passed, the failure of any action required to be properly performed, **the official may void the tax sale and refund the amount paid to the successful bidder.** If the full amount of the taxes, assessments, penalties, and costs have not been paid, the property must be brought to tax sale as soon as practicable.

 S.C.Code Ann. § 12–51–150 (2000) (emphasis added). As will be discussed *infra,* this statutory section was recently amended to also provide to the successful bidder any interest earned on the purchase price. *See* 2006 S.C. Act No. 386, effective June 14, 2006.

oversights, and/or miscommunications within the Beaufort County offices;" (2) the tax sales were not voided "due to any actions or inactions on the part of" respondents; (3) the tax sales would have been set aside by a court if the Treasurer had not voided them; (4) the County retained the purchase price on each property for at least 28 days, and for three of the properties, the funds were held for over a year; (5) the Treasurer's Office refunded the full purchase price to respondents; and (6) the County earned a 6% rate of interest on respondents' funds with an actual earned amount of $28,010.93 in interest.

Seeking the interest their money earned while in the County's possession, respondents brought suit against the County of Beaufort, the Treasurer of Beaufort County, and the Tax Collector of Beaufort County (collectively "petitioners" or "the County"). One of respondents' theories for relief was unjust enrichment. Petitioners answered, asserting that respondents were limited to the statutory remedy. The master-in-equity heard the matter and ruled in favor of respondents. Specifically, the master found that: (1) the applicable statute, section 12–51–150, was silent as to interest; and (2) applying the rules of equity, petitioners would be unjustly enriched if they retained the interest earned on respondents' funds when it was petitioners' errors that caused them to void the tax sales. Therefore, the master awarded respondents actual damages of $28,010.93.

The Court of Appeals affirmed. *Key Corporate, supra.* First, the Court of Appeals found that section 12–51–150's silence on the subject of interest did not "entitle[ ] the County to retain the interest." *Key Corp.,* 360 S.C. at 516, 602 S.E.2d at 106. The Court of Appeals then reasoned that because other sections within Chapter 51 specifically address interest,[2] the Legislature's omission regarding interest in section 12–51–

---

**2.** *See* S.C.Code Ann. § 12–51–100 (where the defaulting taxpayer redeems the property, the successful bidder at the tax sale is entitled to be "refunded the purchase price plus the interest"); S.C.Code Ann. § 12–51–130 (County is directed to invest amounts paid at a tax sale that exceed the amount owed by delinquent taxpayer in a separate account "so as not to be idle," and if taxpayer does not claim the overage within the specified time period, County is entitled to both the overage and "the earnings for keeping the overage").

150 required that the rules of equity be applied. Like the master-in-equity, the Court of Appeals found "it would be unjust to allow the County to keep the interest on the purchase prices of tax sales that were voided due to the County's own errors and omissions;" therefore, the Court of Appeals concluded that respondents were entitled to the interest actually earned while in the County's possession. *Id.* at 519–20, 602 S.E.2d at 107–08.

## ISSUE

Did the Court of Appeals err in affirming the award of interest to respondents?

## DISCUSSION

 Petitioners argue that the Court of Appeals erred in not following the plain and unambiguous language of section 12–51–150 which, at the relevant time, provided only for a return of the "amount paid" to the successful bidder when a tax sale is voided. Petitioners further contend it was error to apply the principles of equity because the statute provided an adequate remedy at law, i.e., the refund of the purchase price paid by the bidder. We agree with both these arguments.

 The sale of the property of a defaulting taxpayer is governed by statute. *Durham v. United Cos. Fin. Corp.,* 331 S.C. 600, 603, 503 S.E.2d 465, 467 (1998). "If a statute's language is plain, unambiguous, and conveys a clear meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Buist v. Huggins,* 367 S.C. 268, 276, 625 S.E.2d 636, 640 (2006) (internal quotes and citation omitted). Instead, the words of the statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *Id.* Moreover, "it is beyond this Court's power to effect a change in the statutes enacted by the Legislature." *State v. Corey D.,* 339 S.C. 107, 120, 529 S.E.2d 20, 27 (2000); *see also Keyserling v. Beasley,* 322 S.C. 83, 86, 470 S.E.2d 100, 101 (1996) (this Court does "not sit as a superlegislature to second guess the wisdom or folly of decisions of the General Assembly").

We need not go any further than the plain language of section 12–51–150 to determine that it was error to award respondents the earned interest. At the time in question, this statute provided a clear remedy if a tax sale was voided—a "refund" of "the amount paid" to the successful bidder. If the Legislature had intended the County to earn and then refund interest, it could easily have specified these requirements in the statute as it did in sections 12–51–100 and 12–51–130. *See* footnote 2, *supra.*

Indeed, the Legislature amended this section just last year to expressly provide that when a tax sale is voided, the purchaser would be provided a refund **plus** actual interest earned. Section 12–51–150 now reads as follows, in pertinent part:

> If the official in charge of the tax sale discovers before a tax title has passed that there is a failure of any action required to be properly performed, the official may void the tax sale and refund the amount paid, **plus interest in the amount actually earned by the county on the amount refunded,** to the successful bidder.

S.C.Code Ann. § 12–51–150 (Supp.2006) (emphasized language effective June 14, 2006).

We have long acknowledged the presumption that in adopting an amendment to a statute, the Legislature intended to change the existing law. *See Vernon v. Harleysville Mut. Cas. Co.,* 244 S.C. 152, 155, 135 S.E.2d 841, 844 (1964); *see also North River Ins. Co. v. Gibson,* 244 S.C. 393, 398, 137 S.E.2d 264, 266 (1964) (where the Court recognized "the rule of construction that the adoption of an amendment which materially changes the terminology of a statute ... raises a presumption that a departure from the original law was intended"); *Hyde v. S.C. Dep't of Mental Health,* 314 S.C. 207, 210, 442 S.E.2d 582, 583 (1994) (Toal, J., dissenting) ("Where a statute has been amended, there is a presumption that the legislature intended to change the law.").[3]

We see no reason not to apply this presumption and therefore conclude that the Legislature's amendment to section 12–

---

**3.** *But see Stuckey v. State Budget and Control Bd.,* 339 S.C. 397, 401, 529 S.E.2d 706, 708 (2000) ("A subsequent statutory amendment may be interpreted as clarifying original legislative intent.").

51–150 sought to effect a change in the law. Because the amendment materially changed the terminology of the statute, a departure from existing law clearly was intended, rather than a clarification of original intent. *See North River Ins. Co. v. Gibson, supra.* In fact, to hold otherwise would indicate that this amendment essentially was a futile act, which we are disinclined to do. *See Denene, Inc. v. City of Charleston,* 352 S.C. 208, 212, 574 S.E.2d 196, 198 (2002) ("The Court must presume the legislature did not intend a futile act, but rather intended its statutes to accomplish something."); *TNS Mills, Inc. v. S.C. Dep't of Revenue,* 331 S.C. 611, 503 S.E.2d 471 (1998) (same).

Accordingly, we hold that the plain language of the prior version of section 12–51–150 clearly limits respondents' remedy to a refund of the purchase price **without** interest.

 Moreover, we find it was error to fashion an equitable remedy in this case. While equitable relief is generally available where there is no adequate remedy at law, an adequate legal remedy may be provided by statute. *Santee Cooper Resort, Inc. v. S.C. Pub. Serv. Comm'n,* 298 S.C. 179, 185, 379 S.E.2d 119, 123 (1989). Indeed, a "court's equitable powers must yield in the face of an unambiguously worded statute." Id. There is simply nothing inadequate about the remedy of a full refund provided by the plain language of the prior version of section 12–51–150; hence, there was no reason for the lower courts to resort to equity principles.

Finally, as to respondents' argument that an equitable remedy is justified by the Court of Appeals' opinion in *H & K Specialists v. Brannen,* 340 S.C. 585, 532 S.E.2d 617 (Ct.App. 2000), we simply disagree. In *H & K Specialists,* the Court of Appeals held that section 12–51–100 [4] applied to the case

---

4. This section, entitled "Cancellation of sale upon redemption; notice to purchaser; refund of purchase price," states:

> Upon the real estate being redeemed, the person officially charged with the collection of delinquent taxes shall cancel the sale in the tax sale book and note thereon the amount paid, by whom and when. The successful purchaser, at the delinquent tax sale, shall promptly be notified by mail to return the tax sale receipt to the person officially charged with the collection of delinquent taxes in order to be expeditiously refunded the purchase price plus the interest provided in Section 12–51–90.

because the tax sale was set aside in a later court action. The Court of Appeals deemed the master-in-equity's return of the property to the delinquent taxpayers "as the ultimate redemption" thereby triggering section 12–51–100's remedy of the return of the purchase price plus interest to the successful bidder. *Id.* at 588, 532 S.E.2d at 619. While the Court of Appeals did note that the County's errors and omissions created the "inequitable situation" present in the case,[5] this does not establish that the Court of Appeals fashioned an equitable remedy in favor of the appellant. *Id.* at 589, 532 S.E.2d at 620. On the contrary, the Court of Appeals merely held that the setting aside of the tax sale was tantamount to a redemption which triggered section 12–51–100 and the remedy contained therein. In the instant case, however, there is no question that the applicable statute is section 12–51–150 which, in its previous form, did not provide the successful bidder with interest on the purchase price.

## CONCLUSION

In sum, we hold that the version of section 12–51–150 in effect at the relevant time only required the County, upon voiding the tax sales, to refund the purchase price, and not the interest, to respondents. Therefore, the Court of Appeals' opinion is

**REVERSED.**

MOORE and BURNETT, JJ., concur.

TOAL, C.J., dissenting in a separate opinion in which PLEICONES, J., concurs.

Chief Justice TOAL:

I respectfully dissent. I would affirm the court of appeals' decision, but remand the case for a determination of the

---

S.C.Code Ann. § 12–51–100 (2000).

**5.** The County failed to provide the delinquent taxpayers with proper notice, which led to the tax sale being set aside by the master, and then erroneously refunded the purchase price to the delinquent taxpayers instead of the successfully bidder.

appropriate amount Beaufort County must disgorge as a result of its unjust enrichment.

A court may grant equitable relief where there is no adequate remedy at law. *Santee Cooper Resort, Inc. v. South Carolina Pub. Serv. Comm'n,* 298 S.C. 179, 185, 379 S.E.2d 119, 123 (1989). An adequate remedy at law is one which provides the plaintiff with "the full end and justice of the case. It is not enough that there is some remedy at law, but that remedy must be as practical, efficient, and prompt as the remedy in equity." *Chisolm v. Pryor,* 207 S.C. 54, 60, 35 S.E.2d 21, 24 (1945) (internal citations omitted).

"Restitution is a remedy designed to prevent unjust enrichment." *Stanley Smith & Sons v. Limestone College,* 283 S.C. 430, 435 n. 1, 322 S.E.2d 474, 478 n. 1 (Ct.App.1984). To recover on a theory of restitution, the plaintiff must show that: (1) he conferred a non-gratuitous benefit on the defendant, (2) the defendant realized some value from the benefit, and (3) it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value. *Sauner v. Pub. Serv. Auth. of South Carolina,* 354 S.C. 397, 581 S.E.2d 161 (2003).

The majority finds that S.C.Code Ann. § 12–51–150 (2000) provided the Respondent's with an adequate remedy at law. Although I agree that the statute provides some remedy for the Respondents, I do not find the remedy adequate because it is neither practical, complete, nor efficient. While the statute mandates the return of the amount paid by the bidder, the statute fails to provide complete relief to the Respondents who, through no fault of their own, have been denied the use of their funds. The interpretation propounded by the majority provides little incentive for the County to resolve its mistakes in a timely fashion, and instead, encourages the County to indefinitely hold funds which rightfully belong to the bidder.

Here, the Respondents gave the County money in exchange for the title to real property. Although the County failed to deliver title for the real property to the Respondents, the County retained the money and utilized the funds to earn interest. Clearly, this constitutes a non-gratuitous benefit for which the County received some value. Surely it is inequita-

ble for the County to retain these benefits without compensating the Respondents for their value.

The County argues that no inequity occurred because the Respondents had actual notice that interest would not be given in the event the tax sale was voided. However, in my opinion, the notice provided to the bidders refers to the statutory interest payments bidders normally receive if a property is redeemed by the taxpayer, *see* S.C.Code Ann. § 12–51–100 (2000), and not the interest the County earns on the funds through a deposit account or other similar investment. While it is reasonable that the County should not pay statutory interest that it has not received through redemption, it is unreasonable and inequitable to allow the County to retain interest earned on funds which rightfully belonged to the Respondents.

Additionally, the majority holds that the legislature intended to prohibit the return of any interest earned on bid money retained by the County because the statute is silent on the issue of interest and the legislature could have included such language in § 12–51–150 as it has in other statutes. I disagree.

First, I would find that the statute's silence regarding the return of interest is ambiguous and does not clearly demonstrate legislative intent to prohibit the return of such interest. This Court has acknowledged that "subsequent legislation may be of service as indicating the construction given to the former by the legislature itself." *Abell v. Bell*, 229 S.C. 1, 5, 91 S.E.2d 548, 550 (1956) (internal citations omitted). Furthermore, this Court recognizes:

the rule of construction that the adoption of an amendment which materially changes the terminology of a statute under some circumstances indicates persuasively and raises a presumption that a departure from the original law was intended. However, like all rules of construction, the presumption is merely an aid in interpreting an ambiguous statute and determining the legislative. intent. The presumption is strongest "in the case of an isolated independent amendment ... and ... is of little force in respect of amendments adopted in a general revision or codification of the laws."

*North River Ins. Co. v. Gibson,* 244 S.C. 393, 398, 137 S.E.2d 264, 266 (1964) (holding that the legislature's modification of language in a statute accomplished by general revision of the laws indicated the legislature's intent to clarify the existing law and not to materially change the existing law).

The legislature recently revised § 12–51–150 to include additional language requiring a county that voids a tax sale to also relinquish the amount of interest actually earned on the amount paid by the bidder. *See* Act No. 386, 2006 S.C. Acts 3077. Like the statute at issue in *Gibson,* § 12–51–150 was modified through an act which provided a general revision to many statutes in our Code of Laws. Because the modification of the statute was accomplished through an act of general revision and not an isolated independent amendment, I would hold that the revision by the legislature indicated its intent to clarify the statute as opposed to an intent to materially modify the law.

Second, I find the majority's reliance on the fact that the legislature could have included language requiring the return of interest in § 12–51–150 as it had in other statutes inconsequential. Both §§ 12–51–100 and –130 refer to situations distinctly different from the one at hand. As I have discussed, § 12–51–100 clearly refers to the statutory interest provided by § 12–51–90. Section 12–51–130, on the other hand, allows the County to retain interest earned on money which it *rightfully possesses* due to the failure of the defaulting taxpayer or owner of record to claim the funds in a timely fashion. Therefore, in my opinion, the legislature's discussion of interest in these statutes provides no indication of its intent to prohibit the relinquishment of interest pursuant to § 12–51–150. These statutes simply address interest in different contexts.

For the foregoing reasons, I would affirm the court of appeals and allow the Respondents to maintain an action against the County for restitution. However, in recognition of the unintentional nature of the County's mistake and the costs associated with carrying out these types of transactions, I believe that the equitable remedy of restitution only allows the Respondents to recover the amount in which the County was unjustly enriched. Therefore, I would remand the case to the

trial court with instructions to determine the amount of unjust enrichment the County must disgorge.

PLEICONES, J., concurs.