697 S.E.2d 604

**Sharon BROWN, Appellant,**

v.

**William B. JAMES, Superintendent for Cherokee County School District, Respondent.**

**No. 4674.**

Court of Appeals of South Carolina.

Heard Oct. 13, 2009.

Decided April 12, 2010.

Withdrawn, Substituted and Refiled July 21, 2010.

Rehearing Denied July 21, 2010.

42

Fletcher Smith, Jr., of Greenville, for Appellant.

M. Jane Turner, David Duff and Kiosha A. Hammond, all of Columbia, for Respondent.

GEATHERS, J.

Sharon Brown (Brown) appeals the circuit court's decision granting District Superintendent William B. James' (James) motion for summary judgment in the matter she brought against him alleging a violation of her rights under the South Carolina Teacher Employment and Dismissal Act (Employment and Dismissal Act).[1]  Brown asserts that (1) the circuit

---

1.  S.C.Code Ann. §§ 59–25–410 to –530 (2004).

court abused its discretion when concluding she had not exhausted her administrative remedies; (2) the circuit court misinterpreted the Employment and Dismissal Act; (3) she had a legal right to appeal directly to the circuit court because the Board of Trustees (Board) had already reached a final decision regarding the nonrenewal of her contract; and (4) the circuit court abused its discretion when concluding that her motion to amend her complaint to add parties was moot. We reverse and remand.

## FACTS

Brown was a teacher, assigned to Limestone Central Elementary School (Limestone) in Cherokee County, South Carolina, for the 2006–2007 school year. Brown had been a teacher at Limestone for eight years before she filed this action. On April 10, 2007, Brown was called to the Cherokee County School District (District) office to meet with Mr. William A. Jones (Jones), Chief Administrative Officer/Director of Personnel for the District. Jones and Brown discussed an "improvement letter" Brown had received from Limestone's Principal, Sharon Jefferies (Jefferies), and the fact that Brown had filed a sexual harassment complaint with the Equal Employment Opportunity Commission against Jefferies.[2] Brown informed Jones that she had planned to file the sexual harassment complaint even before she received the improvement letter.[3] Jones told Brown she could either go

---

2. The record does not explain what an improvement letter is, but it can be inferred that it is a letter outlining a plan to improve the teacher's performance. Section 59–25–440 of the South Carolina Code (2004) states:

   Whenever a superior, principal, where applicable, or supervisor charged with the supervision of a teacher finds it necessary to admonish a teacher for a reason that he believes may lead to, or be cited as a reason for, dismissal or cause the teacher not to be reemployed he shall: (1) bring the matter in writing to the attention of the teacher involved and make a reasonable effort to assist the teacher to correct whatever appears to be the cause of potential dismissal or failure to be reemployed and, (2) except as provided in section 59–25–450, allow reasonable time for improvement.

3. Brown's initial pro se complaint and her sworn affidavit make reference to her EEOC complaint, which she filed based on claims of sexual harassment, racial discrimination, and retaliation.

back to work or take leave under the Family Medical Leave Act due to the "hostile/threatening" work environment. Brown chose to take the leave because Jones told her she would be paid until the end of her contract year, which was July 2007. Jones then informed Brown that he was going to recommend that her teaching contract not be renewed and advised her to resign.

Subsequently, Brown received a letter dated April 12, 2007, from James, stating that at Jefferies' recommendation, her contract for the upcoming year would not be renewed. Brown retained attorney Theo W. Mitchell (Attorney Mitchell), and within fifteen days of the April 12, 2007 notice, she submitted a written request for an opportunity to be heard under the Employment and Dismissal Act. The Board received Brown's request on April 27, 2007. However, on April 24, 2007, the Board took up James' April 12th "notice of intent not to renew" letter and voted to terminate Brown's contract that same day. The Board did not inform Brown of its decision.

Even though the Board had already made its final determination regarding Brown's contract, the Board asked Attorney Mitchell if Brown would waive the fifteen-day requirement for scheduling the hearing to give it an opportunity to discuss the matter. Brown agreed to the waiver. The Board then notified Attorney Mitchell that it wanted to depose Brown before the hearing.

Subsequently, Attorney Mitchell informed the Board that Brown would not be available for a deposition prior to a hearing. Thereafter, on two separate occasions, the Board informed Attorney Mitchell that if it did not receive a response from either Brown or him regarding the scheduling of a deposition, it would consider Brown's noncooperation as a voluntary withdrawal of her request for a hearing, and the case would be closed. Brown did not participate in a deposition. On November 27, 2007, an attorney for the Board sent Attorney Mitchell a letter stating, "As I have had no contact from you since September 25, 2007, the District now considers the request [for a hearing] to be withdrawn and the matter closed." The Board did not schedule or give notice of a hearing. Consequently, on November 29, 2007, Brown filed

an action in the circuit court against James for violation of the
Employment and Dismissal Act.

## PROCEDURAL HISTORY

Brown filed her initial complaint in circuit court because she
believed her due process rights were violated under the
Employment and Dismissal Act in that her contract was not
renewed and she was never afforded an opportunity to be
heard. Specifically, in her complaint against James, Brown
alleged breach of contract, fraud, breach of contract accompa-
nied by a fraudulent act, negligence and/or negligent misrep-
resentation, breach of duty of good faith and fair dealing, and
intentional infliction of emotional distress. In the case before
us, Brown asserts the Board made a final decision regarding
her employment before she was afforded an opportunity to be
heard as required by the Employment and Dismissal Act.
Brown also asserts that she could not comply with the Em-
ployment and Dismissal Act's thirty-day appeal process re-
garding the Board's final determination as she did not have
knowledge of the Board's final determination until eleven
months after the decision.[4] James did not file a formal
answer that addressed any of the issues Brown raised in her
complaint. Instead, on January 18, 2008, fifty days after the
complaint was filed and served, James filed a motion to
dismiss under Rule 12(b)(6), SCRCP, or in the alternative, a
motion for summary judgment under Rule 56, SCRCP.

On February 13, 2008, Brown filed a motion to add the
Board as a defendant. On March 7, 2008, James renewed his
motion, stating only that Brown had not exhausted her admin-
istrative remedies. During February and March 2008, Brown
filed a request for production of documents and requests to
admit. During March and April, James answered the re-
quests. After Brown received the responses to the request
for production, she sought to amend her complaint to add the
Board's attorneys as defendants predicated on their knowl-

---

4. The Board never sent Brown a formal notification of its final decision
regarding her termination. She became aware of the date of the final
decision through the Board's discovery responses to the case before the
circuit court.

edge of and involvement in what she perceived to be a fraudulent act.

On April 28, 2008, the circuit court heard Brown's motion to amend and James' motion to dismiss. On May 5, 2008, the circuit court issued an order granting James' motion to dismiss,[5] concluding that Brown had not exhausted her administrative remedies. The court also concluded that based on the dismissal, Brown's motion to amend was rendered moot. On May 12, 2008, Brown filed a motion for reconsideration, which included a request that if the court upheld the dismissal, that it be without prejudice. On June 20, 2008, the circuit court issued an order denying Brown's motion. This appeal followed.

## ISSUE ON APPEAL

The issue presented in this case is whether the circuit court erred in granting James' motion for summary judgment because it concluded that Brown failed to exhaust her administrative remedies.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, an appellate court applies the same standard of review as the circuit court under Rule 56, SCRCP. *Wogan v. Kunze,* 379 S.C. 581, 585, 666 S.E.2d 901, 903 (2008). The circuit court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

5. James filed a motion to dismiss the complaint pursuant to Rule 12(b)(6), SCRCP, or, in the alternative, a motion for summary judgment pursuant to Rule 56, SCRCP. Under Rule 12(b)(6), SCRCP, a defendant may move to dismiss a complaint based on a failure to state facts sufficient to constitute a cause of action. *Spence v. Spence,* 368 S.C. 106, 116, 628 S.E.2d 869, 874 (2006). In considering such a motion, the trial court must base its ruling solely on allegations set forth in the complaint. *Id.* In the order granting the dismissal, the circuit court considered "the record in this case, the applicable law, and the argument of counsel and Brown." In doing so, it effectively treated James' Rule 12(b)(6) motion to dismiss as a Rule 56 motion for summary judgment as it based its ruling on allegations and information set forth outside the complaint. *Baird v. Charleston County,* 333 S.C. 519, 527, 511 S.E.2d 69, 73 (1999); *Gilbert v. Miller,* 356 S.C. 25, 27, 586 S.E.2d 861, 862–63 (Ct.App.2003).

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Russell v. Wachovia Bank, N.A.,* 353 S.C. 208, 217, 578 S.E.2d 329, 334 (2003); *Knox v. Greenville Hosp. Sys.,* 362 S.C. 566, 569–70, 608 S.E.2d 459, 461 (Ct.App.2005); *B & B Liquors, Inc. v. O'Neil,* 361 S.C. 267, 270, 603 S.E.2d 629, 631 (Ct.App.2004).

## LAW/ANALYSIS

### I. Exhaustion of Administrative Remedies

Brown argues the circuit court erred in concluding that her claims were not properly before it due to her failure to exhaust her exclusive statutory remedy under the Employment and Dismissal Act. We agree.

Initially, we address the applicability of the doctrine of exhaustion of administrative remedies to local school boards. Whether under the Administrative Procedures Act (APA),[6] general administrative law standards, or the fundamental principles of administrative law, Brown was required to exhaust her administrative remedies before seeking judicial review. Moreover, the Board was also subject to the limitations and exceptions to the exhaustion doctrine.

> The doctrine of exhaustion of administrative remedies requires that where a remedy before an administrative agency is provided, relief must be sought by exhausting this remedy before the courts will act. This doctrine is well established, is a cardinal principle of practically universal application, and must be borne in mind by the courts in construing a statute providing for review of administrative action.

2 Am. Jur. 2d *Administrative Law* § 595 (1962) (citing *Bustos–Ovalle v. Landon,* 225 F.2d 878 (9th Cir.1955); *James v. Consol. Steel Corp.,* 195 S.W.2d 955 (Tex.Civ.App.1946); *Bowen v. Dep't of Soc. Sec.,* 14 Wash.2d 148, 127 P.2d 682 (1942)) (footnotes omitted);[7] *see also* 2 Kenneth Culp Davis & Rich-

---

6. S.C.Code Ann. §§ 1–23–310 to –400 (2005 & Supp.2009).

7. Although the current version of 2 Am. Jur. 2d *Administrative Law* does not include the quotation, the cases cited for its propositions are still binding.

ard J. Pierce, Jr., *Administrative Law Treatise* § 15 (3rd ed. 1994) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)) ("[It is] the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.").

Under the APA, section 1–23–380 specifically states, "A party who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review pursuant to this article and Article 1." Our courts have applied the APA standards to certain local school board administrative decisions. In *Lee County School District Board of Trustees v. MLD Charter School Academy Planning Committee*, a case involving a local school board's decision regarding a charter school application, our Supreme Court established that the standard of judicial review was the APA standard of review. 371 S.C. 561, 565, 641 S.E.2d 24, 26 (2007). Also, and more notably, the Court referred to its analysis in *Porter v. South Carolina Public Service Commission*, 333 S.C. 12, 507 S.E.2d 328 (1998), as establishing the requirements for administrative agencies when presenting their findings. The Court stated: "[a]lthough *Porter* addresses the Public Service Commission, we find it applicable to *all administrative agencies, including local school boards.*" *Lee County Sch. Dist.*, 371 S.C. at 567, 641 S.E.2d at 28. (emphasis added).

Further, in *McWhirter v. Cherokee County School District No. 1*, 274 S.C. 66, 261 S.E.2d 157 (1979), our Supreme Court referred to the actions of a local school board in language that indicates that the board is held to the standards of an "agency" as defined in the APA. In *McWhirter*, similar to the case at hand, an elementary school teacher sought to enjoin the school district from terminating her under the Employment and Dismissal Act. The Court stated:

In *Law v. Richland County School District No. 1*, 270 S.C. 492, 243 S.E.2d 192 (1978), we held that if any of the charges against a teacher are supported by substantial evidence, the school board's decision to dismiss must be sustained. We defined "substantial evidence" as "evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that *the adminis-*

*trative agency* reached or must have reached in order to justify its action." (citation omitted).

*McWhirter*, 274 S.C. at 68–69, 261 S.E.2d at 158 (emphasis added).

Additionally, there has also been a decision from this Court interpreting the power of the circuit court under the APA when dealing with a local school board's discretion in teacher terminations under the Employment and Dismissal Act. In *Adamson v. Richland County School District One*, this Court stated: "S.C.Code Ann. § 1–23–380(6) (Supp.1997) [an APA provision] gives the circuit court authority to reverse an *agency* decision 'made upon unlawful procedure' or in excess of 'statutory authority.' " 332 S.C. 121, 128, 503 S.E.2d 752, 755–56 (Ct.App.1998) (emphasis added).

Hence, the aforementioned authorities militate the conclusion that the parties in the instant action are subject to the exhaustion of administrative remedies doctrine of the APA. And although the standards of the APA apply in this case, the application of the Employment and Dismissal Act primarily informs the analysis and renders its outcome.

In this case, Brown received notice that her teaching contract was recommended for nonrenewal.[8] In order to fully exhaust her administrative remedies, Brown was required to request a hearing before the Board within the time frame prescribed by the Employment and Dismissal Act. Section 59–25–420 of the South Carolina Code (2004) states, "Any teacher, receiving a notice that he will not be reemployed for the ensuing year, shall have the same notice and opportunity for a hearing provided in subsequent sections for teachers dismissed for cause during the school year."

In order to secure her opportunity for a hearing, Brown was required to make a written request to the Board within fifteen days of the notice of nonrenewal pursuant to section 59–25–460 of the South Carolina Code (2004). Here, there is no dispute that Brown timely requested a hearing after receiving the Board's April 12, 2007 notice. The analysis of this matter is convoluted for two reasons: (1) the Board officially voted to terminate Brown's contract on April 24, 2007 (unbeknownst to

---

8. The notice did not inform Brown of the cause for the nonrenewal of her contract, as required by sections 59–25–420 and 59–25–460 of the South Carolina Code (2004).

Brown) prior to affording her the opportunity for a hearing, and (2) the Board dismissed her appeal on November 27, 2007, because she refused to submit to a deposition. We will address each of these issues in turn.

### A. *Finality of an Agency Action*

■ Brown asserts that the April 24, 2007 vote by the Board constituted a final action. We agree. The minutes of the April 24, 2007, Board meeting show a final decision regarding the termination of Brown's contract was made even before her fifteen-day period to request a hearing had expired.[9] On appeal, James admits a final determination regarding Brown's contract was made on April 24, 2007, but argues that the Board accepted the recommendation "subject to the [Employment and Dismissal] Act's procedural protections, particularly [Brown's] right to a Board hearing."[10] Yet, there is no language in the Employment and Dismissal Act that states a *final* decision of the Board is *subject to* a teacher's right to a hearing after the fact.

Our Supreme Court has expounded upon the exhaustion of administrative remedies with regard to an agency's final decision. In *South Carolina Baptist Hospital v. South Carolina Department of Health & Environmental Control*, the Court held:

> An agency decision which does not decide the merits of a contested case ... is not a final agency decision subject to judicial review ... It would be premature for a court to decide the merits of a dispute when the agency responsible for making the decision has not yet had an opportunity to decide the merits of the case.

291 S.C. 267, 270, 353 S.E.2d 277, 279 (1987).

In that case, the Court did not find judicial review of an interlocutory decision to be appropriate. *Id.* Conversely, judicial review would have been appropriate if an evidentiary

---

9. The Agenda for the April 24, 2007 Cherokee County School District No. 1, Board of Trustees, Board Meeting is replete with separate and distinct categories that address personnel *recommendations;* however, the reference to the nonrenewal of Brown's contract is titled "Terminations."

10. James makes these assertions on pages 8 and 9 of the Final Reply Brief of Respondent.

hearing was conducted and a final decision was made regarding the merits of the case. *Id.*[11] Additionally, in *Canteen v. McLeod Regional Medical Center*, 384 S.C. 617, 624, 682 S.E.2d 504, 507 (Ct.App.2009), the Appellate Panel of the Workers' Compensation Commission reversed the findings of the single commissioner regarding a brain injury and remanded the case for a determination of permanency to body parts other than the claimant's brain. The claimant immediately sought judicial review and the employer filed a motion to dismiss, arguing the Appellant Panel's decision was interlocutory because it had remanded the case for further proceedings. *Id.* However, this Court held, "because the appellate panel ruled on [the only issue before it], there was a final agency decision on the merits in this case and [the claimant] exhausted all of her administrative remedies." *Id.*

In the case at hand, whether or not to terminate Brown was the only issue to be determined, and when the Board unanimously voted to terminate Brown, it reached a final decision on the merits. Section 59–25–480 of the South Carolina Code (2004) specifically states, "The decision of the district board of trustees shall be final, unless within thirty days thereafter an appeal is made to the court of common pleas of any county in which the major portion of such district lies."

■ Further, when the Board voted to accept James' recommendation for the nonrenewal of Brown's teaching contract prior to conducting a hearing, its decision had an immediate effect on Brown's legal rights.[12] Sections 59–25–460 and 59–

11. In *Darby v. Cisneros*, 509 U.S. 137, 144, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993), the United States Supreme Court held that "the finality requirement is concerned with whether the initial agency decision maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury...." Additionally, in *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 825–28 (9th Cir.2002), the Ninth Circuit held that under certain circumstances, an agency's initial decision can be considered final for exhaustion purposes. Specifically, when an agency has completed the process for reaching an initial decision that has immediate legal effects on the petitioner, the initial decision will be considered a final decision, even though the initial decision-maker may reconsider its decision or the initial decision is subject to review within the agency.

12. During oral argument, the Court stated, "Her [Brown's] contract was terminated on the 24th," to which counsel for James interjected,

25–470 of the South Carolina Code (2004) make it expressly clear that *before* the Board makes a final decision regarding the acceptance or rejection of a recommendation for nonrenewal of a teacher's contract, the teacher must be afforded the opportunity to be heard. The observance of the procedural requirements of the Employment and Dismissal Act is mandatory and not a matter of discretion.

■ With regard to what Board action constituted a final agency decision, James inaccurately interprets the procedure outlined in section 59–25–470 and improperly conflates the requirements of section 59–25–410 with those of section 59–25–470.[13]

Section 59–25–410 of the Employment and Dismissal Act instructs the Board to decide and notify the teachers "in their employ concerning their employment for the ensuing year." According to the statute, by April 15th of each year, the Board or its designee,[14] must notify the teachers in writing of the recommendations for non-renewal. James notified Brown with an April 12th letter of his intent not to renew her contract for the ensuing year. This satisfied the April 15th notice requirement of section 59–25–410. Thereafter, pursuant to section 59–25–470, the Board must afford the adversely affected teachers a hearing based on the notice of dismissal that was recommended by the superintendent. After the hearing is completed, the Board is required to either affirm or withdraw the notice and that action will translate into its final decision. *See* S.C.Code Ann. § 59–25–470 (2004); *see also*

"... effective on June 7th." Consequently, in order for there to be an effective date of termination, there had to have been a decision to terminate Brown in the first place.

13. "All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute." *Georgia–Carolina Bail Bonds, Inc. v. County of Aiken*, 354 S.C. 18, 23, 579 S.E.2d 334, 336 (Ct.App.2003). "It is well settled that statutes dealing with the same subject matter are in *pari materia* and must be construed together, if possible, to produce a single, harmonious result." *Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 109, 536 S.E.2d 372, 375 (2000).

14. In this case, the Board's designee was Cherokee County Superintendent James.

*Adamson,* 332 S.C. at 128, 503 S.E.2d at 756 (explaining the Board is free to reject the superintendent's recommendation, and, until then, there is no final board action).

Contrary to James' argument, there are no inconsistencies or conflicts between section 59–25–410 and 59–25–470. When the Board voted unanimously on April 24th to terminate Brown's contract, it clearly affirmed the notice of dismissal and this constituted a final decision. Consequently, there was nothing left procedurally under the Employment and Dismissal Act for Brown to do except appeal to the court of common pleas pursuant to section 59–25–480. The fact that an administrative hearing was not conducted below rests with the Board's failure to follow procedure as prescribed in the Employment and Dismissal Act, and not in any failure of Brown to exhaust her administrative remedies.

### B. *Exceptions to the Requirement of Exhaustion*

■ Brown asserts that even if she failed to exhaust her administrative remedies before the Board, exhaustion was not required because her case satisfied one of the exceptions to the exhaustion requirement. We agree.

■ South Carolina, like most jurisdictions, recognizes exceptions to the exhaustion of administrative remedies requirement. The general rule is that administrative remedies must be exhausted absent circumstances supporting an exception to application of the general rule. *Andrews Bearing Corp. v. Brady,* 261 S.C. 533, 536, 201 S.E.2d 241, 243 (1973); *Ex parte Allstate Ins. Co.,* 248 S.C. 550, 567, 151 S.E.2d 849, 855 (1966). A commonly recognized exception to the requirement of exhaustion of administrative remedies exists when a party demonstrates that pursuit of administrative remedies would be a vain or futile act. *Moore v. Sumter County Council,* 300 S.C. 270, 273, 387 S.E.2d 455, 458 (1990); *Ward v. State,* 343 S.C. 14, 19, 538 S.E.2d 245, 247 (2000); *Video Gaming Consultants, Inc. v. S.C. Dep't of Revenue,* 342 S.C. 34, 39, 535 S.E.2d 642, 645 (2000). "Futility, however, must be demonstrated by a showing comparable to the administrative agency taking 'a hard and fast position that makes an adverse ruling a certainty.'" *Law v. S.C. Dep't of Corr.,* 368 S.C. 424, 438, 629 S.E.2d 642, 650 (2006) (citing *Thetford Props. IV Ltd.*

*P'ship v. U.S. Dep't of Hous. & Urban Dev.*, 907 F.2d 445, 450 (4th Cir.1990)). Another exception to the exhaustion requirement is recognized when an agency has acted outside of its authority. *Responsible Econ. Dev. v. S.C. Dep't of Health & Envtl. Control*, 371 S.C. 547, 553, 641 S.E.2d 425, 428 (2007).

Brown argues she was not required to participate in a hearing after a final determination had already been made regarding the nonrenewal of her teaching contract, as such a pursuit would constitute a futile act. Consequently, she asserts that she was within her legal right to appeal directly to the circuit court. We agree.

Article 1, section 22, of the South Carolina State Constitution states:

No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard . . . and he shall have in all such instances the right to judicial review.

Further, section 59-25-470 states that after the hearing has taken place and the Board has had the opportunity to determine "whether the evidence showed good and just cause for the notice of suspension or dismissal," or in this case, nonrenewal of Brown's teaching contract, the Board "shall render its decision accordingly, either affirming or withdrawing the notice of suspension or dismissal." In his brief, James cites this section of the Code and admits "recommendations, when adverse to a teacher, are subject to the [Employment and Dismissal] Act's procedural protections, particularly the right to a Board hearing pursuant to § 59-25-470." [15]

Plainly, the procedure is set in place to afford the teacher a meaningful review of the evidence *prior* to the Board making a final determination, as a review of the evidence after the fact would be futile. "The elementary and cardinal rule of statutory construction is that the Court ascertain and effectuate the actual intent of the legislature." *Horn v. Davis Elec. Constructors, Inc.*, 307 S.C. 559, 563, 416 S.E.2d 634, 636 (1992). Where, as here, the terms are clear and

---

15. James makes this assertion on page 9 of the Final Reply Brief of Respondent.

unambiguous, "the Court must apply them according to [their] literal meaning." *Anders v. S.C. Parole & Cmty. Corr. Bd.*, 279 S.C. 206, 209, 305 S.E.2d 229, 230 (1983).

Our research has not revealed any specific South Carolina case law addressing whether a teacher must participate in a hearing after the Board has made a final determination regarding the nonrenewal of her contract. However, courts in other jurisdictions have analyzed issues similar to the case at bar. Specifically, the Indiana Court of Appeals has held:

[T]he notice by the school corporation to the tenure [sic] teachers was not sufficient, as it did not comply with the statutory requirements for the dismissal of a tenure teacher and such failure to comply with the statutory requirements did not require a tenure teacher to go forth with the burden of requesting a hearing for cause.

*Joyce v. Hanover Cmty. Sch. Corp.*, 150 Ind.App. 296, 276 N.E.2d 549, 564 (1971) (finding that the school board's action was arbitrary and capricious as it pertained to tenured teachers), *overruled on other grounds by Myers v. Greater Clark County Sch. Corp.*, 464 N.E.2d 1323 (Ind.Ct.App.1984); *see also Tippecanoe Valley Sch. Corp. v. Leachman*, 147 Ind.App. 443, 261 N.E.2d 880, 887 (1970) (holding that "evidence . . . was sufficient to sustain an implied finding by the trial court that the procedure provided by the contract for the removal of the plaintiff from his position as teacher was not followed and that failure to follow it was a gross abuse of discretion").

The statutes interpreted in the Pennsylvania case of *In re Swink*, 132 Pa.Super. 107, 200 A. 200 (1938), are very similar to South Carolina law in that they afford a teacher who has been notified that her contract has been recommended for nonrenewal an opportunity to present her case to the local school board before a final decision on termination is made.[16] In that case, the Pennsylvania Superior Court held the Board of School Directors failed to comply with the statutory requirements and reversed the board's actions, stating that the observance of the prescribed procedure "is not a matter of discretion." *Id.* at 203. The court further held, "[T]he purpose of the procedure prescribed by the act for the dismissal

---

16. *See* 24 P.S. § 1121 (1937) and note, and §§ 1126, 1161, 1201, and 1202 (1937).

of a teacher . . . is to prevent arbitrary action by the board, to afford a fair hearing to the teacher . . . *before dismissal, and to provide for full, impartial, and unbiased consideration by the board of the testimony produced." Id.* (emphasis added).

Similarly, the North Dakota Supreme Court has held that in order for a teacher to benefit from a hearing, she must be allowed to present her case in an atmosphere where even though there exists a contemplated recommendation for non-renewal, the ultimate decision of termination has yet to be made. *Henley v. Fingal Pub. Sch. Dist. No. 54,* 219 N.W.2d 106, 110 (N.D.1974). Furthermore, the Supreme Court of Connecticut has explained:

> Notice before termination and notice after termination are not two sides of the same coin. Once the board has committed itself by its action to a particular result it may be too late in the day to suggest a change of direction; at that stage the urge to proceed along its committed course is compelling. But before the die is cast it is still possible for persuasion to affect the result.

*Petrovich v. New Canaan Bd. of Educ.,* 189 Conn. 585, 457 A.2d 315, 318 (1983).

Analogous to the cases cited above, in the present case, a hearing after the fact would have likely proven futile. Sections 59–25–420 and 59–25–430 of the South Carolina Code (2004) provide for a hearing prior to a final decision of the Board to avoid futility and allow for a meaningful and fair administrative hearing. Section 1–23–380 of the South Carolina Code (2005 & Supp.2009) states in part, "A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy." *Id., see also* Jean Hoefer Toal, et al., *Appellate Practice in South Carolina* 49 (2d ed. 2002).

Brown did all that was required of her under the Employment and Dismissal Act. Consequently, as a matter of law, Brown was entitled to have her case proceed before the circuit court, and the granting of James' motion for summary judgment was improper.

C.  *Procedures for Compelling Participation in a Deposition*

Brown argues the circuit court incorrectly concluded that because she did not participate in a deposition as requested by the Board, she essentially abandoned her right to a hearing and the Board was justified in dismissing her case. We agree.

James argues Brown was required to participate in a deposition prior to a hearing and uses section 59–25–490 of the South Carolina Code (2004) to support his position. Section 59–25–490, in pertinent part, states, "Any party to such proceedings *may* cause to be taken the depositions of witnesses. . . ." (emphasis added).

However, the Employment and Dismissal Act does not authorize the Board to dismiss actions for lack of participation in a deposition. Instead, it outlines the procedure the Board should have taken. Specifically, the pertinent portion of section 59–25–490 states:

Such depositions shall be taken *in accordance with and subject to the same provisions, conditions and restrictions as apply to the taking of like depositions in civil actions at law in the court of common pleas; and the same rules with respect to the giving of notice to the opposite party,* the taking and transcribing of testimony, the transmission and certification thereof and matters of practice relating thereto shall apply.

(emphasis added).

Here, when the Board did not receive any response from Brown or her attorney regarding her participation in the requested deposition, it should have served Brown with a subpoena in an effort to compel her attendance at a deposition pursuant to section 59–25–500 of the South Carolina Code (2004). Moreover, the Board could have moved before the circuit court to enforce such a subpoena under section 59–25–520.

The record does not indicate, nor was it asserted at oral argument, that the Board issued a subpoena or that one was served on Brown in an effort to compel her attendance at the requested deposition. Further, the record does not indicate

that Brown was ever served with notice of the deposition or notice of a hearing before the Board. Section 59–25–520 of the Employment and Dismissal Act does not vest the Board with authority to dismiss Brown's request for a hearing based on her nonparticipation in a deposition;[17] rather, it prescribes procedural mechanisms including seeking sanctions from the circuit court to compel participation in a deposition. However, the Board did not avail itself of this; instead, it presupposed to dismiss her case, which is not sanctioned under South Carolina law.

## II. Dismissal of the Motion to Amend

Brown argues the circuit court abused its discretion when it dismissed her motion to amend her complaint to add parties on the grounds that her motion was moot in light of the fact that the court granted James' motion for summary judgment. We agree.

Rule 15(a), SCRCP, states in part, "[A] party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires and does not prejudice any other party." Rule 15(c), SCRCP, further states, "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleadings, the amendment relates back to the date of the original pleading."

"It is well established that a motion to amend is addressed to the sound discretion of the trial judge, and that the party opposing the motion has the burden of establishing prejudice." *City of N. Myrtle Beach v. Lewis–Davis*, 360 S.C. 225, 232, 599 S.E.2d 462, 465 (Ct.App.2004). "Courts have wide latitude

---

17. James contends that the Board did not dismiss Brown's request for a hearing for a lack of participation in a deposition. However, in the November 27, 2007 letter to Brown's then attorney, Theo W. Mitchell, James' attorney states:

I am writing to follow up on my letter to you dated October 25, 2007, in which I informed you that it is our position that because Ms. Brown is unable or unwilling to appear for a deposition, she has withdrawn her request for a hearing regarding her non-renewal … As I have had no contact from you since September 25, 2007, the District now considers the request to be withdrawn and the matter closed.

in amending pleadings and '[w]hile this power should not be used indiscriminately or to prejudice or surprise another party, the decision to allow an amendment is within the sound discretion of the trial court and will rarely be disturbed on appeal.'" *Berry v. McLeod,* 328 S.C. 435, 450, 492 S.E.2d 794, 802 (Ct.App.1997). "The trial judge's finding will not be overturned without an abuse of discretion or unless manifest injustice has occurred." *Id.*

Here, Brown attempted to add the Board's attorneys as defendants based on responses she received from discovery requests. Brown asserted the alleged improper conduct of the attorneys arose out of the same transaction or occurrence set forth in her original pleading. Because the circuit court erred in concluding that Brown had not exhausted her administrative remedies and in granting James' motion for summary judgment, Brown's motion to amend her complaint should have been considered. We, however, do not address the merits of her motion to amend her complaint and we remand the issue of whether Brown should be allowed to amend her complaint to the circuit court.

### III. Automatic Renewal of Contract

Brown contends that because the Board did not recommend the nonrenewal of her contract before the April 15th deadline, her termination was illegal and her contract was automatically renewed. James argues the Board complied with the Employment and Dismissal Act's April 15th deadline as prescribed in section 59-25-410 of the South Carolina Code (2004) in that Brown received a letter on April 12, 2007, notifying her of his intention to recommend nonrenewal of her contract to the Board. Brown did not raise the issue of automatic renewal to the circuit court; thus, this issue is not preserved for our review. *Staubes v. City of Folly Beach,* 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000).

### CONCLUSION

The wording of the Employment and Dismissal Act is unambiguous regarding procedure, and the record fails to show the Board complied with its requirements. As a result, the circuit court erred in concluding Brown did not exhaust

her administrative remedies. The circuit court also erred in interpreting the Employment and Dismissal Act, as Brown was not required to request a hearing of the Board after a final decision had been made regarding the nonrenewal of her contract; and, as a matter of law, Brown was entitled to appeal directly to the circuit court. Accordingly, the circuit court erred when it granted James' motion for summary judgment and when it concluded that Brown's motion to amend her complaint to add parties was moot.

Based on the foregoing, the circuit court's order is

**REVERSED AND REMANDED.**

SHORT and WILLIAMS, JJ., concur.