**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Fred Holland Realty, Inc., and LaJuan Kennedy,
Appellants,

v.

The City of Folly Beach, Respondent.

Appellate Case No. 2021-000105

———————

Appeal from Charleston County
Jennifer B. McCoy, Circuit Court Judge

———————

Unpublished Opinion No. 2024-UP-009
Submitted November 1, 2023 – Filed January 3, 2024

———————

**AFFIRMED**

———————

John W. Carrigg, Jr., of Carrigg Law Firm, of Lexington,
for Appellants.

Joseph C. Wilson, IV, of Joseph C. Wilson Law Firm,
LLC, of Folly Beach, for Respondent.

———————

**PER CURIAM:** Fred Holland Realty, Inc. (Fred Holland) and LaJuan Kennedy (collectively, Appellants) appeal an order from the circuit court upholding a fine levied against them under an April 2020 ordinance temporarily banning check-ins to rentals in response to the COVID-19 pandemic. Appellants argue the circuit court

erred in finding (1) Respondent City of Folly Beach (the City) had the power to pass the ordinance, (2) the ordinance was not preempted by the Governor's executive orders related to COVID-19, and (3) the check-in giving rise to this action constituted a violation of the ordinance. Appellants also argue that the ordinance was arbitrary and capricious. We affirm.

## FACTS

On April 6, 2020, in response to COVID-19, the City adopted Emergency Ordinance No. 06-20[1] (the Ordinance) that stated in relevant part the following: "Starting on April 7, 2020 at 9:00 a.m., no new check-ins are permitted[,] regardless of length of stay, until May 31, 2020. Visitors currently checked-in may remain until the end of their existing reservation." To enforce this provision, the ordinance authorized the following penalties: (1) suspension or revocation of a business license or other business license related penalties, (2) penalties available under section 16-7-10 of the South Carolina Code (Supp. 2023),[2] or (3) any other penalties provided by state law. The Ordinance also provided that any appeal arising from the imposition of a penalty would follow the City's existing procedure for business licensing appeals.

Fred Holland Realty, Inc. is a rental property management company and LaJuan Kennedy is the company's owner. On April 14, 2020, Fred Holland allowed a renter who was due to check out that day to move into one of its other properties under a new reservation, complete with a new rental rate. A license official of the City found that this constituted a new check-in and thus violated the Ordinance. The official assessed a civil fine of $500 for each day the renter remained at the address, although the City later agreed that the fine would be capped at $2,500.

Appellants subsequently appealed the notice of violation and fine to the City's hearing officer. Before holding a hearing on the appeal, the hearing officer found, based on the briefs, that (1) the City had the power to enact the Ordinance; (2) the

---

[1] The first iteration of the ordinance was passed on March 28, 2020. The April 6 amended version was in effect when the events giving rise to this case transpired.

[2] Section 16-7-10 criminalizes conduct done in contravention of a provision of an emergency proclamation by the Governor, not conduct that violates a local ordinance even if that local ordinance was passed during a state of emergency.

Governor's Executive Order No. 2020-19[3] did not preempt the Ordinance; and (3) the Ordinance did not criminalize otherwise legal conduct in contravention of article VIII, section 14 of the South Carolina Constitution.[4]  After a hearing on July 30, 2020, the hearing officer found that the April 14 check-in at Fred Holland's property violated the Ordinance and affirmed the imposition of the fine.  Appellants appealed to the circuit court, and the circuit court held a hearing on November 6, 2020.  The circuit court then affirmed the hearing officer's findings in a January 8, 2021 order.  This appeal followed.

## ISSUES ON APPEAL

I.    Did the circuit court err in affirming the hearing officer's conclusion that the City had the power to pass an emergency ordinance restricting rental check-ins?

II.   Did the circuit court err in affirming the hearing officer's conclusion that the Ordinance was not preempted by state law or executive order?

III.  Did the circuit court err in failing to find the Ordinance was arbitrary and capricious?

IV.   Did the circuit court err in affirming the hearing officer's finding that the check-in to one of Fred Holland's properties violated the Ordinance?

## STANDARD OF REVIEW

"In an action at law, tried without a jury, the appellate court standard of review extends only to the correction of errors of law." *Myers v. Nat'l States Ins. Co.*, 362 S.C. 41, 44, 606 S.E.2d 486, 488 (Ct. App. 2004) (quoting *Key Corp. Cap., Inc. v.*

---

[3] Governor's Exec. Order No. 2020-19, 44-4 S.C. Reg. 51 (Apr. 24, 2020) prohibited short-term rental check-ins across the state from areas under a CDC travel advisory. Past executive orders are available online at https://governor.sc.gov/executive-branch/executive-orders.

[4] Article VIII, section 14(5) prohibits municipalities from setting aside "criminal laws and the penalties and sanctions for the transgression thereof."  This provision has been interpreted to require "statewide uniformity of [criminal law]." *Martin v. Condon*, 324 S.C. 183, 188, 478 S.E.2d 272, 274 (1996).

*County of Beaufort*, 360 S.C. 513, 516, 602 S.E.2d 104, 105 (Ct. App. 2004)). When reviewing an appeal to the circuit court from a lower court, absent an error of law, "we will affirm the [court]'s holding if there are any facts supporting [its] decision." *Hadfield v. Gilchrist*, 343 S.C. 88, 94, 538 S.E.2d. 268, 271 (Ct. App. 2000).

## LAW AND ANALYSIS

### I.     The City's Power to Pass the Ordinance

Appellants advance two main arguments on appeal: (1) the City did not have the power to pass the Ordinance because such authority is strictly within the domain of the state and (2) the Ordinance conflicted with the Governor's executive orders related to COVID-19 and was preempted. Thus, we first consider whether the circuit court erred in concluding that the City had the authority to enact the Ordinance.

Determining the validity of a local ordinance involves answering two questions: "(1) did the local government have the power to enact the local ordinance, and if so (2) is the ordinance consistent with the constitution and general law of this [s]tate." *Aakjer v. City of Myrtle Beach*, 388 S.C. 129, 133, 694 S.E.2d 213, 215 (2010). "[A] presumption of validity attaches to all legislation, especially legislation relating to police powers." *Town of Hilton Head Island v. Fine Liquors, Ltd.*, 302 S.C. 550, 554, 397 S.E.2d 662, 664 (1990) (citation omitted). Municipal ordinances are legislation and are therefore entitled to this presumption of validity. *Aakjer*, 388 S.C. at 133, 694 S.E.2d at 215.

As the circuit court noted, the Home Rule Act[5] vests in municipalities broad powers to enact ordinances relating to general welfare, including public health:

> Each municipality . . . may enact . . . ordinances, not inconsistent with the [c]onstitution and general law of this state, including the exercise of powers in relation to roads, streets, markets, law enforcement, health, and order in the municipality or respecting any subject which appears to it necessary and proper for the security, general welfare, and convenience of the municipality or for preserving health, peace, order, and good government in it[.]

---

[5] S.C. Code Ann. §§ 5-7-10 to -310 (2004 & Supp. 2023).

§ 5-7-30.  Additionally, "[t]he powers of a municipality shall be liberally construed in favor of the municipality and the specific mention of particular powers shall not be construed as limiting in any manner the general powers of such municipalities." § 5-7-10.  These grants of power serve as "a grant of the sovereign police power of the [s]tate itself," limited only "(1) by the territorial confines of the municipality . . . and (2) by the proviso that legislation thereunder shall not be inconsistent with the laws of the State." *City of Charleston v. Jenkins*, 243 S.C. 205, 208, 133 S.E.2d 242, 243 (1963).

Finally, section 5-7-250(d) of the South Carolina Code expressly provides: "To meet public emergencies affecting life, health, safety[,] or the property of the people, [a municipal] council may adopt emergency ordinances."  The statute further provides that "such ordinances shall not levy taxes, grant, renew[,] or extend a franchise or impose a change of service rate," and it creates procedural requirements for adopting such emergency ordinances.  *Id.*

A. The City's Power to Respond to Emergencies

Appellants challenge the circuit court's affirmance of the hearing officer's finding that the City had the power to pass the Ordinance because, in Appellants' view, section 25-1-440 of the South Carolina Code (Supp. 2023) gives the authority to declare a state of emergency exclusively to the Governor, and the City attempted to illegally avail itself of this power.  Appellants call attention to the parts of section 25-1-440 recognizing that the Governor "is responsible for the safety, security, and welfare of the [s]tate" and granting him the power to declare a state of emergency in response to a disaster or public health emergency.  Appellants also argue that section 5-7-250—which provides that municipalities "may adopt emergency ordinances"— is "merely . . . procedural."

In our view, Appellants mischaracterize the Ordinance as an attempt to declare a state of emergency akin to the Governor's exercise of such authority in response to natural disasters and health emergencies.  The Ordinance does not purport to do so. Instead, the Ordinance simply exercises the powers under section 5-7-250 that serve to equip municipalities to "adequately respond to public emergencies" without declaring a state of emergency.  Furthermore, Appellants' argument that section 5-7-250 is merely procedural is without merit; the circuit court correctly pointed out that the first sentence of the statute explicitly states that municipalities have the right to pass emergency ordinances.[6]

---

[6] Section 5-7-250(d) states municipalities "may adopt emergency ordinances."

We affirm the circuit court's finding that the City was acting within its power when it passed the Ordinance. We now turn to Appellants' argument that the Ordinance was preempted by executive order.

### B. Preemption by Executive Order

Appellants also argue the Ordinance was preempted by the Governor's Executive Order No. 2020-19, which restricted *short-term* rental check-ins from areas under a CDC travel advisory in response to COVID-19.

Executive orders made pursuant to a declaration of emergency by the Governor "have the force and effect of law as long as the emergency exists." § 25-1-440(a)(1). There are three ways the Executive Order could have preempted the Ordinance. First, the Executive Order could have expressly preempted local legislation in the area by explicitly stating such an intent. *See Foothills Brewing Concern, Inc. v. City of Greenville*, 377 S.C. 355, 363–64, 660 S.E.2d 264, 268–69 (2008) (reversing the trial court's finding that legislation regulating indoor smoking expressly preempted a local ordinance). Second, the Executive Order could have impliedly preempted the Ordinance if the state scheme covered the subject "so thoroughly and pervasively . . . as to occupy the entire field," or "mandate[d] statewide uniformity." *Beachfront Ent., Inc. v. Town of Sullivan's Island*, 379 S.C. 602, 605, 666 S.E.2d 912, 914 (2008) (citing *S.C. State Ports Auth. v. Jasper Cnty.*, 368 S.C. 388, 397, 629 S.E.2d 624, 628 (2006)). Third, preemption is implied when "[an] ordinance hinders the accomplishment of [a] statute's purpose or when the ordinance conflicts with [a] statute such that compliance with both is impossible." *S.C. State Ports Auth.*, 368 S.C. at 400, 629 S.E.2d at 630. "[A]dditional regulation to that of [s]tate law does not constitute a conflict therewith." *Fine Liquors, Ltd.*, 302 S.C. at 553, 397 S.E.2d at 664 (quoting *Arnold v. City of Spartanburg*, 201 S.C. 523, 536, 23 S.E.2d 735, 740 (1943)). Appellants mention all three types of preemption but only advance substantive arguments as to the first two.

With regard to express preemption, Appellants point out that Executive Order No. 2020-19 contains the following language: "If or to the extent that any political subdivision of this [s]tate seeks to adopt or enforce a local ordinance, rule, regulation, or other restriction that conflicts with this Order, this Order shall supersede and preempt any such local ordinance, rule, regulation, or other restriction." Exec. Order No. 2020-19 at § 3.B. It is clear this language would expressly preempt any ordinance from the City that "conflicts with [the] Order."

However, the Ordinance in this case merely supplements state law. It does not conflict with the Executive Order in any way.

With regard to short-term rentals, the Executive Order prohibited

> new reservations or bookings from or for individuals residing in or [traveling] from any country, state, municipality, or other geographic area subject to or identified in a CDC travel advisory or other CDC notice as a location with extensive community transmission of COVID-19, to include the Tri-State Area (consisting of the States of New York, New Jersey, and Connecticut).

Exec. Order No. 2020-19 at § 1.B. The City presented evidence that at the time of the Executive Order the CDC had issued a *global* travel advisory in response to the pandemic. Alternatively, even if we read the Executive Order as Appellants suggest, the City's ban on *all* rental check-ins is clearly supplementary to the Executive Order's ban on bookings and reservations by individuals traveling from New York, New Jersey, and Connecticut. Nothing in the Ordinance is expressly or impliedly "inconsistent or irreconcilable" with the Executive Order. *See Fine Liquors*, *Ltd.*, 302 S.C. at 553, 397 S.E.2d at 664. Appellants point to only differences between the two schemes. However, that the Executive Order and the Ordinance are different is not enough; in order to be expressly preempted, the Executive Order's language requires that the Ordinance *conflict* with the order. *See Id.*, 302 S.C. at 553, 397 S.E.2d at 664 ("[A]dditional regulation to that of [s]tate law does not constitute a conflict therewith." (quoting *Arnold*, 201 S.C. at 536, 23 S.E.2d at 740).

Appellants also argue the Executive Order impliedly preempts any additional legislation for the entire field. When considering this type of preemption, attention is paid to how the legislation refers to the authority of municipalities to continue to make regulations on the subject. *See Denene, Inc. v. City of Charleston*, 352 S.C. 208, 213, 574 S.E.2d 196, 199 (2002) ("It would have been unnecessary for the legislature to refer to municipalities' authority to regulate the hours of operation of retail sales of beer and wine if the General Assembly intended to occupy the entire field."); *see also AmVets Post 100 v. Richland Cnty. Council*, 280 S.C. 317, 319, 313 S.E.2d 293, 293–94 (1984) (finding no implied field preemption when a state statute regulating bingo referenced a county-level licensing system for the same). Here, the Executive Order acknowledged the continuing power of municipalities "to do whatever may be deemed necessary to maintain peace and good order during the State of Emergency." Exec. Order No. 2020-19 at § 2.B. Furthermore, the presence

of language expressly preempting any local laws that *conflicted with*—not merely *differed from*—the Executive Order implies that the ability for municipalities to pass their own ordinances on the subject of short-term rentals was merely restricted, not impliedly preempted outright.

Appellants mention, but do not advance any argument in support of, the third type of preemption—"implied conflict preemption." First, we note that "[a]n issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority." *State v. Lindsey*, 394 S.C. 354, 363, 714 S.E.2d. 554, 558 (Ct. App. 2011). Even if this argument were not abandoned, we would still find it without merit. Appellants offer no evidence that the Ordinance hinders the Executive Order in any way. Simultaneous compliance with both is far from impossible because the Ordinance merely supplements the Executive Order. *S.C. State Ports Auth.*, 368 S.C. at 400, 629 S.E.2d at 630 (noting that to establish implied conflict preemption, a challenger to a law must show that it "hinders the accomplishment of [a] statute's purpose" or that compliance with both is impossible).

Lastly, Appellants also cite to another executive order that they believe preempted the Ordinance through implied field preemption. The Governor issued Executive Order No. 2021-23 on May 11, 2021, to address local mask ordinances. Governor's Exec. Order No. 2021-23, 45-5 S.C. Reg. 24 (May 28, 2021).[7] In it, the Governor expressly preempted local ordinances relating to mask requirements and banned "vaccine passports." Appellants argue that this is a post-hoc indication that the Governor intended to preempt the entire body of COVID-related regulations in his original 2020-19 order. We view it as an indication of the exact opposite.

Implied field preemption occurs when "the state statutory scheme so thoroughly and pervasively covers the subject as to occupy the field or when the subject mandates statewide uniformity." *Aakjer*, 388 S.C. at 133, 694 S.E.2d at 215. Executive Order No. 2021-23 expressly preempted only those ordinances specifically pertaining to particular areas of COVID-related regulations, but did not preempt the entire field of COVID-related regulations. Executive Order No. 2020-19 is highly distinguishable from Executive Order No. 2021-23 in its treatment of preemption. Executive Order No. 2021-23 declared invalid "any ordinance, order, or other measure" predicated on the Governor's previous declarations of emergency "that requires the general public [within the municipality's jurisdiction] to wear a [f]ace [c]overing." It also prohibited municipalities from requiring "vaccine

---

[7] Available online at https://governor.sc.gov/executive-branch/executive-orders.

passports" and from closing certain facilities in response to COVID-19. Contrary to Appellants' assertion, the specific and targeted approach to preemption taken in the 2021-23 order only bolsters the conclusion that the 2020-19 order was not intended to preempt the entire field of COVID-related regulations because it shows that the Governor *could* have chosen to expressly do so.

### C. Remaining Policy Arguments

Throughout their brief, Appellants make several arguments that are aimed at the policy basis for the Ordinance, apparently in an attempt to argue that the City did not have the power to pass the Ordinance. Among other things, Appellants suggest that one of the questions before this court is, "what if the [C]ity of Greenville closed its borders?" This hypothetical speaks only to the political soundness of the Ordinance, not any substantive legal requirement encumbering the City's police power. "The primary source of the declaration of the public policy of the state is the General Assembly; the courts assume this prerogative only in the absence of legislative declaration." *Citizens' Bank v. Heyward*, 135 S.C. 190, 204, 133 S.E. 709, 713 (1925). "We do not sit as a superlegislature to second-guess the General Assembly's decisions." *ArrowPointe Fed. Credit Union v. Bailey*, 438 S.C. 573, 580, 884 S.E.2d 506, 509 (2023). In our view, and for reasons already discussed, sections 5-7-30 and 5-7-250 of the Home Rule Act clearly authorize an ordinance such as the one at hand. Any issues Appellants have with the power the General Assembly has delegated to local governments are better addressed to the legislature.

## II. The Arbitrary and Capricious Argument

Appellants' briefly argue that the circuit court erred in failing to find that the Ordinance was arbitrary and capricious. We hold that this issue is not preserved for appellate review.

To be preserved for appellate review, an issue must have been both raised to and ruled on by the trial court. *State v. Jones*, 435 S.C. 138, 144, 866 S.E.2d 558, 561 (2021). However, parties are not required to raise issues to administrative courts that would be vain or futile. *See Staubes v. City of Folly Beach*, 339 S.C. 406 415, 529 S.E.2d 543, 547 (2000) ("[Courts] do not require parties to engage in futile actions in order to preserve issues for appellate review."); *cf. Brown v. James*, 389 S.C. 41, 54–55, 697 S.E.2d 604, 611 (Ct. App. 2010) ("A commonly recognized exception to the requirement of exhaustion of administrative remedies exists when a party demonstrates that pursuit of [the remedy] would be a vain or futile act.").

The only time the argument that the Ordinance was arbitrary and capricious appears in the record is when it was before the circuit court sitting in an appellate capacity. Before this court, Appellants claim that the circuit court "ignore[d] the argument that [the Ordinance] is contrary to the [c]onstitution and [l]aw of [South Carolina] because it is in fact arbitrary and capricious." To Appellants, "[i]t is worthy of note that the Governor amassed the entire emergency apparatus [of South Carolina]" and produced Executive Order 2020-19 while the City "had available [to it] one individual—Dr. Edward O'Bryan" and produced a more restrictive ordinance.

The City correctly points out that this argument would expand the scope of the appeal and would effectively deny the City a chance to introduce evidence establishing the considerations that went into passing the Ordinance. To preserve this argument for appeal, Appellants were required to raise the issue to the hearing officer because, as a municipal court, it had authority to review the claim and grant a remedy. *See* S.C. Code Ann. § 14-25-45 (2017) ("Each municipal court shall have jurisdiction to try all cases arising under the ordinances of the municipality for which [they are] established."); *see also City of Pickens v. Schmitz*, 297 S.C. 253, 255, 376 S.E.2d 271, 272 (1989) ("Municipal [c]ourts comply with the constitutional mandate that they be part of a unified judicial system."). Appellants seemingly understood this as they brought and raised other constitutional claims—including that the Ordinance allegedly criminalized otherwise legal conduct—and the hearing officer considered and ruled on them.

Appellants *did* make arguments to the hearing officer that the Ordinance was being applied inconsistently by the City, but this is a materially different argument than the one they raised on appeal to the circuit court. The circuit court agreed with the City's attorney that if the issue was not raised to the hearing officer, the court could not rule on it on appeal. The circuit court's order consequently did not acknowledge the argument. For the same reasons, we hold that it is unpreserved for this court's review on appeal.

### III. The April 14, 2020 Check-In as a Violation of the Ordinance

Appellants contest the circuit court's finding that moving a renter from one property to another constitutes a new check-in under the Ordinance. The Ordinance provides that "Starting on April 7, 2020 at 9:00 a.m., no new check-ins are permitted[,] regardless of length of stay, until May 31, 2020. Visitors currently checked-in may remain until the end of their existing reservation." We affirm as to this issue.

Appellants contend the Ordinance is ambiguous and ask this court to apply the tools of statutory interpretation to the Ordinance. Such an approach is unnecessary. "If a statute's language is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning." *Eagle Container Co.*, 379 S.C. at 570–71, 666 S.E.2d at 896. Here, the first sentence clearly forbade new check-ins until May 31, 2020, while the second sentence provided that visitors currently checked-in to rentals could remain until the end of their existing reservation. The contested check-in involved a renter reaching the end of their existing reservation and subsequently checking in to a new one. Contrary to Appellants' framing, the renter was not simply relocated from one of Fred Holland's properties to another under an existing reservation. Fred Holland issued an entirely new reservation to the renter at a different property after the previous reservation ended, complete with a new rental rate. We agree with the circuit court and the hearing officer that this constituted a new check-in. Any other reading would disturb the plain meaning of the Ordinance.

Thus, we affirm the circuit court's affirmance of the hearing officer's finding that the April 14, 2020 check-in constituted a new check-in under the Ordinance and that Fred Holland violated the Ordinance as a result.

## CONCLUSION

For the foregoing reasons, the circuit court's order is

**AFFIRMED.**[8]

**THOMAS, KONDUROS, and GEATHERS, JJ., concur.**

---

[8] We decide this case without oral argument pursuant to Rule 215, SCACR.